## Engelke v. Chouteau, *Appellant.*

1. **Malicious Prosecution:** GRAND JUROR. One cannot be held to answer for his action as a member of a grand jury which prefers an indictment, even though the facts upon which the indictment was found are an insufficient foundation for it and not such as would warrant its prosecution.

2. ———: EVIDENCE: PRACTICE: DEMURRER. Where the evidence in a case of malicious prosecution wholly fails to show any connection of the defendant with the prosecution of plaintiff, a demurrer thereto should be sustained.

*Appeal from Lincoln Circuit Court.*—Hon. Elijah Robinson, Judge.

REVERSED.

*Hitchcock, Madill & Finkelnburg* and *Valle Reyburn* for appellant.

The court should have instructed the jury to find for the defendant. There is no evidence that Mr. Chouteau was engaged in the prosecution of Mr. Engelke.

*Frank J. Bowman* for respondent.

(1) The supreme court will have nothing to do with the weight of testimony; it is sufficient if both parties have introduced evidence tending to prove their respective allegations. *Brown v. Railroad,* 50 Mo. 641; *Grove v. City of Kansas,* 75 Mo. 672; *Morton v. Moberly,* 18 Mo. App. 457. (2) Where there is any substantial evidence to support a verdict in a law case, the appellate court will not disturb the judgment, simply because it appears to be against the weight of evidence. *Rea v. Ferguson,* 72 Mo. 225; *Myer v. McCabe,* 73 Mo. 236.

BRACE, J.—This was an action for malicious prose-
cution in which Charles P. Chouteau, John M. Glover
and Joseph Livingston were made defendants. The
cause was dismissed as to Glover and Livingston.

The petition contained two counts. In the first
count the defendants are charged with having mali-
ciously procured the indictment of the plaintiff by the
grand jury of the city of St. Louis, for an alleged
fraudulent conspiracy with one Edward P. Barrett to
defraud one Alice Livingston and others interested in a
certain corporation known as the Windsor Hotel Com-
pany; and with having, after the finding of said indict-
ment, without probable cause maliciously prosecuted
said indictment against the plaintiff.

In the second count, the defendants are charged
with having maliciously caused the arrest of the plain-
tiff, and his prosecution upon a false affidavit and com-
plaint for the same alleged fraudulent conspiracy. The
defendant Chouteau answered denying all the allega-
tions of the petition. On the issues joined between him
and the plaintiff, the jury found for the plaintiff on the
first count and assessed his damages at seventy-five
hundred dollars, and for the defendant on the second
count. The defendant appeals.

At the close of the plaintiff's evidence, the defend-
ant asked an instruction in the nature of a demurrer to
the evidence and at the close of all the testimony asked
a like instruction. The jury having found for the
defendant on the cause of action set up in the second
count of the petition, all questions arising upon the trial
of that issue are eliminated from the case. The ques-
tion whether the demurrer to the evidence upon the
first count should have been sustained, if resolved in
favor of the defendant, is decisive of the case, and will
be first considered.

On the eighteenth of July, 1882, the grand jury of the criminal court of St. Louis returned into said court an indictment against Charles H. Peck, Edward P. Barrett and Bernard H. Engelke, charging them with a fraudulent conspiracy to cheat and defraud Sallie A. Livingston, Joseph H. Livingston and the Windsor Hotel Company of their and its property, by means of a certain promissory note and deed of trust in the nature of a mortgage to secure the same, executed by the said Bernard H. Engelke in the name of said company, by him as president thereof, on the twenty-seventh of February, 1882, and by a subsequent sale thereafter made of said property under said deed of trust. The defendant Charles P. Chouteau was a member of that grand jury. The offense charged in the indictment being a misdemeanor, it was certified to the court of criminal correction under the statute, and was filed in the office of the clerk of that court on the same day that it was returned.

On the twenty-second of July, 1882, the said Peck commenced a civil action against Chouteau growing out of some transactions connected with the Vulcan Iron Works, a corporation in which both of them had theretofore been interested. Depositions were being taken in this case from time to time between that date, and the first of September following. On one occasion about the latter date, when the parties were thus engaged, the fact that Peck had been indicted was alluded to by some one present. Peck in a threatening manner replied, "Yes, and Mr. Chouteau was at the bottom of it and I will make him smart for it" or "somebody will have to suffer for it." Judge Madill, who was of counsel for Chouteau and engaged in taking the depositions, replied to this remark, "Mr. Peck, that is a very broad statement to make."

Judge Madill and Mr. Chouteau, after leaving the office of Mr. Woodward, where the depositions were

being taken, went to Judge Madill's office, where Mr. Peck's language became the subject of conversation between them. Judge Madill in his evidence thus states what then passed between them: "In reply either to an inquiry or a remark which he (Chouteau) made, I said that I construed the remark of Mr. Peck to mean that if the indictment were out of the way he would institute a suit against Mr. Chouteau, Mr. Chouteau having been a member of the grand jury which found this indictment. He asked me what I thought he ought to do about it; I told him I thought he owed it to himself and to the gentlemen who were associated with him on that grand jury to see that that indictment, when it came on for hearing, was fairly and properly presented to the court in which the indictment was found. He asked me what I would suggest in the way of securing that result: I said to him I thought he ought to employ some reputable lawyer, not a member of the criminal bar, who should see that what I had suggested was done, that is to say, that the case was presented in such a way as to develop what was in it, and thereby justify the action of the grand jury."

In pursuance of this suggestion, a short time after this interview, the defendant employed Mr. John M. Glover. The extent of his employment was shown by the following evidence of Mr. Chouteau in a deposition and as preserved in a bill of exceptions on a former trial in the case of *Barrett v. Chouteau,* 94 Mo. 13, introduced by the plaintiff. Mr. Chouteau was asked:

Q. "Were you one of the grand jury that returned the indictment against Mr. Charles H. Peck, Mr. Engelke and Mr. Barrett on or about the eighteenth of July last?"

A. "I was."

Q. "Did you employ Mr. John M. Glover to prosecute the indictment against Mr. Peck, Mr. Engelke and Mr. Barrett?"

A. "I did not."

The witness' attention was then called to the following answer made by Mr. Glover in a deposition given by him in this case: "I was last employed in the prosecution of Peck, Engelke and Barrett under the indictment of conspiracy to defraud, that was tried before Thoroughman," and he was asked whether that statement was true or false.

A. "Mr. Glover was not employed to prosecute any suit, simply to see that the indictment was fully and fairly laid before the court; nothing more."

In his examination in the Barrett case, Mr. Chouteau was asked why he testified in his deposition, before he knew that Mr. Glover had given his deposition in the case, that he did not employ Mr. Glover to prosecute the indictment against Mr. Peck, Mr. Engelke and Mr. Barrett and his answer was: "It is because you couple the three names together, my employment of Mr. Glover was as against Mr. Peck, nothing whatsoever with regard to the other two.

Q. "You had it in mind when you answered, that there was but one indictment?"

A. "That is my impression; there was only one indictment."

Witness was then asked whether he did not employ Mr. Glover to prosecute that indictment. Witness answered that there was a severance of the parties, though not at the time when Mr. Glover was employed, and continuing said: "Mr. Glover was employed as I stated before, as against Mr. Peck, but in regard to the two others, Mr. Barrett and Mr. Engelke, nothing. I knew nothing about these gentlemen; I had no cause of complaint against them. Those names were never mentioned either by myself or Mr. Glover."

Q. "Did you ever employ Mr. Glover to prosecute either Mr. Barrett or Mr. Engelke under that indictment?"

A.    "Never."

Q.    "Do you know whether as a matter of fact either of them were prosecuted by him under that indictment?"

A.    "I do not, I mean by that, personally, I know nothing about it."

On the fifteenth day of October, 1882, the following proceedings were had in the court of criminal correction :

"State of Missouri  
    vs.  
"Bernard H. Engelke,  
"Edward P. Barrett and  
"Charles H. Peck.  
           On a charge of conspiracy.

"Now, at this day, comes the defendant Charles H. Peck, by his attorney and files a motion for a separate trial herein."

And, afterwards, on the twenty-fifth day of October, 1882, the following proceedings were had in said cause, to-wit :

"Now, at this day, the court, being fully advised of and concerning the motion for separate trial as to defendant Charles H. Peck, doth order and determine that the same be sustained."

A special judge was elected to try the cause, the regular judge being disqualified. The trial of this indictment, as against Peck, was begun on the ninteenth of December, 1882, and on the twenty-first, the court gave the following instruction to the jury :  "The court instructs the jury to acquit the defendant Charles H. Peck, on the ground of there being a material variance between the deed of trust described in the indictment and the one offered in evidence by the state." The jury returned a verdict accordingly.

The record then proceeds as follows :  "Thereafter, on Friday, December 22, 1882, the following proceedings were had in said cause, Thomas Thoroughman, special judge, presiding :

"State of Missouri

    *vs.*

"Bernard H. Engelke and

"Edward P. Barrett.

"Now, at this day, comes the prosecuting attorney and enters a *nolle prosequi* herein ; it is therefore ordered by the court that the said defendants be discharged, and that they go hence without bail."

And this was all that was ever done under the indictment. Peck, Engelke and Barrett were afterwards prosecuted upon an information by the prosecuting attorney, sworn to by J. H. Livingston charging them with substantially the same fraudulent conspiracy set forth in the indictment, in which prosecution Glover assisted, having been employed for that purpose by Livingston, and which resulted in a verdict of not guilty. Upon this prosecution is based the second count in plaintiff's petition, with which defendant's employ- ment of Glover had nothing to do, and so the jury found.

There is not a scintilla of evidence in the whole case as made by the plaintiff tending to show that the defendant had anything to do with procuring the indict- ment against Peck, Engelke and Barrett to be found, except the fact that he was a member of the grand jury by which it was returned, and the foregoing proceedings in the court of criminal correction is all the evidence tending to show a prosecution under said indictment that was introduced by the plaintiff, and that evidence, failing to show that plaintiff was ever prosecuted under the indictment, the defendant's demurrer to plaintiff's evidence ought to have been sustained as to the first count and ought to have been sustained as to that count at the close of the whole evidence, unless that of the defendant disclosed a prosecution to some extent as

charged in the petition. The defendant's evidence bearing upon this question is that of Mr. Chouteau and Mr. Glover. Mr Chouteau testified:

Q. "When you had the talks with Mr. Glover about employing him were you acquainted with either Barrett or Engelke?"

A. "No, sir; their names were never mentioned."

Q. "Did you know them at all?"

A. "I did not; I had never seen them."

Q. "You say their names were never mentioned between whom?"

A. "Neither by Mr. Glover, myself or Judge Madill."

Q. "The employment of Mr. Glover then had refference—"

Witness, "Exclusively to Mr. Peck."

Q. "Tell the jury with reference to which of these parties you employed Mr. Glover?"

A. "Mr. Peck, exclusively."

As to the motives which prompted him to employ an attorney to look after the indictment, so far as Mr. Peck was concerned, Mr. Chouteau says:

Q. "I will ask the question: Please state to the jury what the reason was that you came to employ Mr. Glover to look after the case of Peck in the court of criminal correction; state exactly what took place; what induced you to take that action?"

A. "I was induced to it by advice of counsel."

Q. "Under what circumstances did you come to speak to Judge Madill about this employment of Mr. Glover—tell the jury?"

A. "Judge Madill spoke to me first about it; Mr. Peck had made threats and accused me of being at the bottom of this indictment."

Q. "Where, under what circumstances, were these threats made?"

A. "It was in the office—we were taking depositions, in the office of Mr. Woodward."

Q. "In what case were the depositions being taken?"

A. "This Vulcan case."

Q. "State what was said and done by Mr. Peck at that time about this matter?"

A. "Some one made an allusion to the indictment, and looking around rather fiercely said 'Yes.'"

Q. "Who?"

A. "Mr. Peck made the remark 'yes, Chouteau is at the bottom of it, of the whole thing; somebody will have to suffer for it.'"

Q. "Was that statement true, that you were at the bottom of it?"

A. "It was not, I had nothing in the world to do with it."

Witness states that afterwards Judge Madill advised him to employ some reputable lawyer to see that the indictment was properly put before the court.

Q. "Which case did you speak of?"

A. "Peck."

Q. "The Peck matter?"

A. "Peck only."

Witness then relates his employment of Mr. Glover, and that he asked him to see whether the indictment was properly placed upon the records before the court. Witness says: "I repeated to him (Glover) as near as possible the advice which I received from Judge Madill, that owing to threats that had been made, that it was due to myself in self-defense and in vindication of my co-jurymen that this case should be properly looked to."

Q. "Before you went to serve on that jury did you hear that this Windsor hotel matter was about to be brought before you as a juror?"

A. "I did not."

Q.    "What did you know, if anything, about the Windsor hotel affair before you went on the grand jury?"

A.    "Nothing."

Q.    "Which of the parties in charge of the hotel were you acquainted with, if anybody, after the time you went on the grand jury?"

A.    "None of them."

Q.    "Did you know Mr. Barrett?"

A.    "I did not."

Q.    "Mr. Engelke?"

A.    "I did not."

Q.    "Mr. Livingston?"

A.    "I did not."

Q.    "Mrs. Livingston?"

A.    "No, sir."

Q.    "Had you any money interest in the hotel?"

A.    "I never had."

Q.    "Did you ever, at that time or any time?"

A.    "No time."

Q.    "Did you subpœna any witnesses to appear before the grand jury?"

A.    "Myself, individually?"

Q.    "Yes, did you?"

A.    "No, sir."

Q.    "What did you do, if anything, to bring that matter before the grand jury?"

A.    "Nothing."

Q.    "Any one for you?"

A.    "No one."

Mr. Glover testified in substance that he was first spoken to by Mr. Chouteau some time after the indictment; that he knew nothing of the matter before that time; that he was asked to look into the facts, ascertain what they were, and report the result; that thereupon he examined the testimony taken before Mr. Ryan, in the case of *Livingston et al. v. Barrett et al.,*

pending before Judge THAYER; also the chain of title
to the property; also had interviews with Judge Krum;
also examined the case of *Peck v. Livingston et al.*;
also the minutes of the hotel company; also the account
books of the hotel; that before he took any steps in court
Peck had procured a severance; that thereupon he tried
the Peck case alone; that the cases against Barrett and
Engelke were *nolle pros'd*, and although subsequently
renewed by way of information lodged in the court of
criminal correction, against Peck, Barrett and Engelke,
that Mr. Chouteau's connection with the matter ceased
before this was done.

Being asked whether he had ever been employed to
look after the prosecution against Engelke or Barrett,
witness says: "I don't think Mr. Chouteau mentioned
Engelke or Barrett. He employed me to prosecute that
indictment. He mentioned Peck only, and put it on
the ground that Peck had threatened him with mali-
cious action, and that he wanted the facts, whatever
they were, good, bad or indifferent, for the state to
appear."

Referring to the first interview with Mr. Chouteau,
Mr. Glover says: "I think that Mr. Chouteau said
that he had nothing to do with it, but was charged with
it by Peck, but he wanted me to find out the facts."

The defendant cannot be held to answer for his
action as a member of the grand jury, even though the
facts upon which the indictment was found were an
insufficient foundation for such indictment, and were
not such as would warrant its prosecution, and the evi-
dence wholly failing to show any connection of the
defendant with any prosecution of the plaintiff under
that indictment plaintiff failed to prove the cause of
action set out in the first count of his petition. Mr.
Chouteau never employed Mr. Glover to prosecute the
plaintiff, and Mr. Glover never did prosecute him, and

so far as the record shows, never appeared or did anything in the case against him upon the indictment. He did employ Glover to prosecute Peck, and Glover did prosecute the case against Peck upon the indictment and for that prosecution has already answered in the courts. *Peck v. Chouteau*, 91 Mo. 138.

On the whole evidence the court should have instructed the jury to find for the defendant and for error in refusing so to do when requested, the judgment is reversed. All concur, except BARCLAY, J., not sitting, and RAY, C. J., absent.