OVERMYER *v.* BARNETT ET AL.

[No. 9,940. Filed June 20, 1919.]

1. ᵥENUE.—*Actions.—Right of.—Damage to Land From Trespass Committed in Another County.—Statutes.—*Under §1438 Burns 1914, §1318 R. S. 1881, providing that when the subject-matter of any suit shall be situate in two or more counties, the court which shall first take cognizance thereof shall retain the same, and §309 Burns 1914, §307 R. S. 1881, providing that actions for the determination in any form of rights or interest in real property and for injuries thereto must be commenced in the county in which the subject of the action, or some part thereof, is situated, where plaintiff's lands located in one county were flooded by reason of the erection of a dam in another county across the outlet of a lake, the circuit court, of the county in which the land was situated had jurisdiction of an action to abate the nuisance and damages. p. 576.

2. WATERS AND WATERCOURSES.—*Obstructing Drain.—Level of Lake.—Statute.—*In an action for damages to land where it appeared that defendants erected a dam which obstructed the flow of water from a lake through a public drain constructed by the state thirty or forty years before the commencement of the action, and because of such obstruction plaintiff's land became flooded, defendants cannot justify the obstruction on the ground that the dam restored the lake to the level existing prior to the building of the drain, so that the removal of the dam would be in violation of §6163 Burns 1914, Acts 1905 p. 447, providing for the maintenance of lakes at their level, since the statute refers to

the maintenance of the lake at its level after the construction of the drain, such improvement being made pursuant to law.  p. 580.

3.  Nuisance.—*Public Nuisance.—Abatement.—Right of Action.*—Though the obstruction of the outlet of the waters of a lake created a public nuisance by reason of flooding low ground around the lake, a landowner whose premises were overflowed and whose health and property were injured thereby may maintain an action for damages and to abate the nuisance because of special injury suffered by him.  p. 582.

4.  Officers.—*Torts of Health Officer.—Liability.*—If the secretary of the state board of health, without authority, allowed or caused the outlet of the waters of the lake to be obstructed, so that a nuisance was created, he is liable as an individual for resulting damage.  p. 583.

5.  Nuisance.—*Abatement.—Acquiescence.*—The doctrine of acquiescence does not apply to a nuisance unless it has continued for twenty years.  p. 583.

6.  Nuisance.—*Actions.—Abatement.—Damages.—Complaint.—Sufficiency.*—In an action by a landowner to abate a nuisance created when a dam erected in the outlet of a lake caused plaintiff's premises to be flooded, and to recover for damages to his land resulting therefrom, complaint *held* sufficient to state a cause for damages against defendants, but not to warrant the granting of equitable relief by way of abatement and injunction, in the absence of averments showing that defendants or any one of them were at the time maintaining the dam or had any right to remove it.  p. 584.

From Fulton Circuit Court; *Smith N. Stevens,* Judge.

Action by Lincoln Overmyer against John A. Barnett and others.  From a judgment for defendants, the plaintiff appeals.  *Reversed.*

*Holman, Bernetha & Bryant,* for appellant.

*Ele Stansbury,* Attorney-General, *Edward M. White* and *Arthur Metzler,* for appellees.

Nichols, P. J.—This action was brought by the appellant against the appellees in the circuit court of Fulton county, Indiana.  The amended complaint is in one paragraph and is in substance as follows:  The

appellant is and has been for the past twenty years
the owner of certain real estate located in Fulton
county, Indiana, containing in all 85.63 acres.  This
land borders upon, and extends into, a portion of what
is known as Bruce Lake, in Fulton county, at the east
and southeast end thereof.  In 1903 there was estab-
lished in Fulton county, Indiana, by the board of com-
missioners a public drain extending from the higher
ground to the east and northeast of the plaintiff's
said land, draining various ponds and wet lands, nec-
essary to be drained for farming purposes, and the
outlet of said ditch was and is into said Bruce Lake,
across the lands of appellant, whose lands were as-
sessed $300, which was paid by him.  Said drain was
called the Overmyer ditch, and was sufficient to drain
appellant's land and make it tillable so that he could
raise thereon good corn and grass, and that it was
worth $60 per acre.  At the west end of said land,
in Pulaski county, there was a natural outlet in the
way of a run or branch extending from the west end
of said lake westward and northward into Tippecanoe
river. Under the Swamp Land Act of the state, thirty
or forty years prior to this time, a public drain was
established which served as an outlet for said lake
into Tippecanoe river, and at a later period, about
twenty years prior to this date, the circuit court of
Pulaski county established another public drain ex-
tending from the west end of said Bruce Lake along
and upon the original run or branch, which deepened
and widened and straightened the same by the use of
a dredge and thereby said ditch became the outlet for
the water running into said lake from the east on to
plaintiff's land, through said Overmyer ditch.  Said
dredged ditch, so constructed, was maintained and

recognized to be an established outlet for the drainage from the east and southeast of said lake through said Overmyer ditch and into Bruce Lake, and the water level was kept reduced, by reason of said dredged ditch at the west end of said Bruce Lake. After the construction of said Overmyer ditch appellant put in a large quantity of tile on his said land, having the same outlet as the Overmyer ditch, and put in lateral drains at an expense of $500, all of which were efficient and did drain appellant's land and make it tillable and valuable as farm land. In June, 1905, the Chicago, Richmond and Muncie Railroad Company, then operating along the side of said Bruce Lake and maintaining a station at said lake, for the purpose of increasing business and passenger traffic, endeavored to enlarge the area of said lake to make a resort for summer tourists, and thereby to enhance its income derived from the increased passenger traffic to and from said station; and said railroad and the other defendants, without authority of law therefor, and without regard to the rights of the appellant, erected a dam at the outlet of said lake and adjacent to said lake, the west end of which is in Pulaski county, Indiana, the remainder of said lake being in Fulton county. Such dam was in Pulaski county, and prevented the water from escaping from said lake into said outlet drain or natural course, and by reason of said dam said water was held back in the lake, causing the water level to rise from twelve to eighteen inches and thereby forcing the water back into plaintiff's said drain, destroying its efficiency and the efficiency of the Overmyer ditch and of the lateral drains, and causing appellant's said land to be submerged, as well as other lands bordering on said lake.

Said railroad company became insolvent and went into the hands of a receiver, and its property, rights and franchises were eventually sold to the Chesapeake and Ohio Railroad Company of Indiana, who is now the owner thereof as successor of the said Chicago, Richmond and Muncie Railroad Company. In the furtherance of their scheme to build said dam and to enlarge the area of said lake, without just cause and in utter disregard of appellant's rights and other landowners bordering said Bruce Lake, and without any notice whatever to appellant or other landowners, they obtained from the secretary of the board of health some order, the nature of which is unknown to the appellant, pertaining to the erection of said dam at an unreasonable elevation, thereby preventing the escape of water from the lake, and causing its water level to rise and submerge appellant's land and other lands along the shore, and to ruin the efficiency of the drain and improvement which had been established by the appellant, as well as that of other landowners. That said secretary of the board of health in the furtherance of his scheme directed the secretary of the board of health of Pulaski county to perform the things required by said railroad company with respect to said order, under the pretense that such action would tend to abate a public nuisance. After said dam was constructed, it was in part washed out so that the water level was again reduced, but the appellees, directly or through others at their expense, particularly the railroad company, and over the protests of the appellant, and against his objections to such construction, rebuilt said dam, and said appellant at said time protested against it being built, and notified the appellees that

the construction of the dam would be ruinous, and would destroy the efficiency of the drains and the efficiency of the Overmyer ditch, and cause him to lose the money he had expended in developing said land through drainage. Said dam again went out in December, 1908, and thereby reduced the level of the lake to some extent, but that the appellees again in May, 1910, over the protests and objection of this plaintiff, acting for themselves and through others, rebuilt said dam of concrete, six inches thick to a height of twelve inches, above the original construction of the dam, thereby causing the said water level of said lake to rise eighteen inches, and to shut off completely the outlet of said lake into the said public drain as established and constructed under the drainage laws of Indiana, in said county of Pulaski, and shutting off the outlet of the said lake through its natural course. That thereby the efficiency of appellant's drains was totally destroyed, and he can no longer farm his land bordering on said lake, fifty acres of which said lands are affected and entirely destroyed for farming purposes. Appellant says that he is entitled to free and unobstructed flow of the water through his drains into said lake reduced to the water level existing prior to the time of the construction of the first-mentioned dam. He has a good house on said land, and barn and other buildings built in part after the construction of the Overmyer ditch. The cellar of his house drains into said lake, and the drain was efficient to drain said cellar and keep it dry and useful. Its efficiency is now destroyed by reason of the acts of the appellees as aforesaid, which caused the water to back up into appellant's cellar, making it wet, damp and moldy, and making bad odors there-

from permeate appellant's house to the detriment of the health of himself and family. Since the erection of said dam a large area of wet, boggy and marshy lands around said Bruce Lake has been created, which affords a breeding place for mosquitoes and other insects and malaria and other disease germs, detrimental to the life and health of people living in and near the neighborhood of said lake, and during certain seasons of the year obnoxious odors and poisonous vapors arise, and the same have become a public nuisance, which did not exist before the said dam was built. That a large number of acres have been made wet and swampy and useless for any purpose. The conditions around said lake before the building of the first dam were not detrimental to public health or welfare, and did not constitute a public nuisance, but the conditions since are detrimental to public health and are a public nuisance. Others around said lake have interest in the right to have restored the original good health conditions that existed prior to the construction of said first dam, and to have the public nuisance now existing removed. The appellant is unable to realize anything from his said land. and his labor is lost, and he derives no profit whatever from fifty acres of his land. He has been damaged in the sum of $5,000. His damages are recurring and continuous, and he has no complete and adequate remedy at law. He demands that the said nuisance be abated, and that the appellees be enjoined from maintaining said dam, and that he have damages in the sum of $5,000.

To this amended complaint the appellees filed their demurrer upon the grounds: (1) That the court has no jurisdiction of the defendants or the subject-mat-

ter of the action.  (2) The court has no jurisdiction over the subject-matter of the action.  (3) There is a defect of parties defendant in this, that other parties are referred to in the complaint as having acted with the defendants in the construction of the dam, who should be made parties defendant. and whose names are unknown and defendants are unable to state their names.  (4) The complaint does not state facts sufficient to constitute a cause of action.

The appellees' demurrer was submitted to and sustained by the court, and the appellant refusing to plead further and electing to stand by his complaint, judgment was rendered in favor of the appellees and against the appellant on such demurrer, from which judgment this appeal is prosecuted.

The only error assigned is the ruling of the court upon the appellee's demurrer to the complaint.

The land, the injury to which is involved in this suit, is located in Fulton county, while the dam, the construction of which resulted in the injury as

1.    alleged in plaintiff's complaint, is located in Pulaski county.  It is the contention of the appellees that the trial court had no jurisdiction of them or of the subject-matter of the action; that such want of jurisdiction appears on the face of the complaint; that the action was for mandatory injunction and to abate a nuisance; and that the demand for damages is only incidental.

Appellees concede that by statute the courts have authority to make all proper judgments, sentences, decrees, orders and injunctions, and to issue all processes, and to do such other acts as may be proper to carry into effect the same in conformity with the Constitution and laws of this state, but that such

courts have no jurisdiction outside of their respective circuits to abate a nuisance by mandate or to enjoin its maintenance.

The appellees say that the subject-matter of this suit is wholly situate in Pulaski county and that the Pulaski Circuit Court alone for that reason has jurisdiction. The appellant contends that the action is properly brought in the Fulton Circuit Court, and cites as his authority §309 Burns 1914, §307 R. S. 1881, which provides that actions for the determination in any form of rights or interest in real property and for injuries thereto must be commenced in the county in which the subject of the action, or some part thereof, is situated.

It has been repeatedly held that actions for trespass upon land must be brought in the county in which the land is situated. The case of *Kinser* v. *Dewitt* (1893), 7 Ind. App. 597, 34 N. E. 1014, was an action for damages for depositing dirt upon land. *Keaton* v. *Snider* (1895), 14 Ind. App. 66, 42 N. E. 372, was an action for damages for the destruction of crops. *Indiana, etc., R. Co.* v. *Foster* (1886), 107 Ind. 430, 8 N. E. 264, was for damages by fire from a locomotive. *Du-Breuil* v. *Pennsylvania Co.* (1892), 130 Ind. 137, 29 N. E. 909, was an action for damages resulting from fire from a locomotive; in this case the land being located in the State of Illinois. In each of the foregoing cases it was held that the action was properly brought in the county in which the real estate was located. But §1438 Burns 1914, §1318 R. S. 1881, provides that, when the subject-matter of any suit shall be situate in two or more counties, the court which shall first take cognizance thereof shall retain the same. This enactment by the legislature of our state

was a common-law principle long before it became statutory by the action of our legislature.

The subject-matter of this action consists of two principle facts, the one being the construction of a dam, which was located in Pulaski county, and the other the resultant injury, by such erection, to real estate which was located in Fulton county. Where two material facts are necessary to give a good cause of action, and they take place in different counties, the cause of action may be said to arise in either county, and, applying this principle of law, it has been held that, where an injury has been committed in one county to real property situate in another, or where the action is founded on two or more material facts, which take place in different counties, the venue may be rested in either. *Foot* v. *Edwards* (1855), 9 Fed. Cas. 358, No. 4,908. 1 Saunders, Pl. and Ev. 413.

The rule is stated in 1 Chitty, Pleading (16th ed.) 281, as follows: "Where * * * an injury has been caused by an act done in one county to land, &c. situate in another; or whenever the action is founded upon two or more material facts, which took place in different counties, the venue may be laid in either."

The rule as stated in Bulwer's Case (1793), 7 Coke 2a, is as follows: That "where the action is founded upon two things done in several counties, and both are material or traversable, and the one without the other doth not maintain the action, there the plaintiff may choose to bring his action in which of the counties he will." This rule is discussed at length in the case of *Rundle* v. *Delaware & R. Canal* (1849), 21 Fed. Cas. 6, No. 12,139, which case approves the doctrine.

The case of *Smith* v. *Southern R. Co.* (1909), 136 Ky. 162, 123 S. W. 678, 26 L. R. A. (N. S.) 927, was an

action by the appellants against the appellees for damages resulting from the destruction of a building by an explosion of dynamite, the building destroyed being located in the State of Tennessee, while the negligent act resulting in such destruction was committed in the State of Kentucky, and in such case it was held that such an action may be brought at the option of the owner in the county and state where the land lies, or in the county and state in which the negligent act was committed, for the reason that the injury and the wrongful act must be deemed as having occurred together or in immediate connection.

The case of *Ruckman* v. *Green* (1876), 9 Hun 225, holds that an action may be maintained in the State of New York for an injury to land situate therein, though the business which occasions the injury and constitutes the nuisance complained of is carried on upon land situate in the State of New Jersey.

In the case of *Thayer* v. *Brooks* (1848), 17 Ohio 489, 49 Am. Dec. 474, the act complained of was done in the State of Pennsylvania, the injury which was occasioned by the act was sustained in Ohio, and in that case it was held that the suit will lie in either state, the court stating that, " 'when an injury has been caused by an act done in one county, to land, etc., situated in another, the venue may be laid in either.' "

In the case of *Smith* v. *Southern R. Co., supra,* it is held that a statute making an action for injury to real property local will not be arbitrarily enforced where the injury results from a cause or act arising or occurring in a state other than the one in which the property is situated. This case has an extended case note discussing jurisdictional questions such as the one in the instant case.

In the case of *Deseret Irrigation Co. v. McIntyre* (1898), 16 Utah 398, 52 Pac. 628, which case is an action to determine the rights of the parties as to the waters of a stream flowing between a certain dam in Santete county and the canals of the plaintiffs in Miller county, and for a perpetual injunction to prohibit the defendants from using or interfering with the water of the river to which the plaintiffs claim to be entitled. In this case it was held that, where a cause of action arises in two or more counties, the plaintiffs may elect in which county they will bring their action, and that water wrongfully diverted in one county to the injury of plaintiffs' rights in another county constitutes one cause of action.

It will be readily seen that under either of the sections of the statutes above quoted, or under either of the lines of authorities cited above, the plaintiff's action was properly brought in Fulton county, for an injury sustained to his lands in that county by a trespass committed in Pulaski county, and we hold that the circuit court of Fulton county had jurisdiction of the action.

Appellees contend that the complaint is bad for the reason that it fails to aver that the dam as constructed in June, 1905, and reconstructed thereafter, maintained the water level of the lake above the original water level of the lake as it existed prior to the time when the water therefrom was permitted to find its own way out of the lake into the drain below. But it is averred in the complaint that thirty or forty years prior to the time of this action the state established and constructed a public drain as an outlet for the lake involved, and that about twenty years prior to the date of this action

there was established by the decree of the Pulaski Circuit Court a public drain extending from the west end of Bruce Lake substantially along the line of the original drain, deepening and widening and straightening said original drain, and that such dredged ditch carried off the water from the plaintiff's lands and drains and from the Overmyer ditch, and kept the level of said lake reduced. The statute which appellee cites being Acts 1905 p. 447, and in force March 6, 1905, and being §6163 Burns 1914, provides only for maintaining the water level of the lake at is established level.

This level, of course, was the level at which the lake was left by the construction and reconstruction of the ditch which was the outlet for the lake, and it was this level with which the defendants are charged with having interfered by the construction of the dam in June, 1905, and by the reconstruction thereof in 1910, in the first instance the water in said lake being raised from twelve to eighteen inches above said established level, and in the second to a height of twelve inches above the height occasioned by the original construction. This action has nothing to do with the level of the lake as determined by its natural outlet.

It is specifically averred in the complaint that the public drain constructed thirty or forty years before this action was commenced, and reconstructed about twenty years before, served as the outlet for the lake into the Tippecanoe river, and that the dam was erected at the outlet of the lake and adjacent to said lake, and, though appellees contend that there is no averment in the complaint that the dam as constructed and reconstructed crossed any ditch, or any part of

the same as it was originally constructed, it does not require any serious stretch of the imagination for us to conclude that the dam constructed at the outlet of the lake was constructed across such outlet, which was the ditch involved. At the time of the construction of such artificial outlet to the lake, it was not a violation of law to so construct it, and when the statute aforesaid was passed it only provided against a disturbance of the level of the lake as established by such drainage. Under the facts averred in the complaint, the removal of the dam would not reduce the level of the lake below that which had been established by law, and therefore such removal could not be a violation of said §6163 Burns 1914, *supra*.

Appellees insist that, under the averments of the complaint, the nuisance complained of is a public nuisance only, and that therefore it can only be

3. abated at the instance of the public. But while the averments of the complaint are sufficient to show that the condition growing out of the construction of the dam created a public nuisance, yet such averments also show that such condition constitutes a private nuisance to the appellant in this, that his and his family's health, his buildings and his lands, have been injured thereby, and it is a rule of law that, where one's property is injured by a nuisance created by another, the fact that the nuisance is a public one is no defense in an action for damages, and such person can sue to abate such a nuisance if he thereby suffers some special injury peculiar to himself. *Haller* v. *Pine* (1846), 8 Blackf. 175, 44 Am. Dec. 762; *Scheible* v. *Law* (1879), 65 Ind. 332; *Dwenger* v. *Chicago, etc., R. Co.* (1884), 98 Ind. 153; *Waltman* v. *Rund* (1884), 94 Ind. 225; *Haggart* v.

*Stehlin* (1893), 137 Ind. 43, 35 N. E. 997, 22 L. R. A. 577.

The appellees contend that the complaint fails to show a cause of action against either the secretary of the state or the county board of health.

4.   Instead of the county board of health, the action seems to be against George Thompson, secretary of the board of health. By the averments of the complaint, the charge is that the original construction was by "the Railroad Company and the other defendants herein," and that, after the dam was washed out, as averred in the complaint, the defendants rebuilt it in a more substantial manner, and raised the dam twelve inches higher than it ever was before. Appellees say that the court judicially knows that the secretary of the state board of health has no power to make orders for the board of health, and that he is only one member of the board. If he had authority to make such orders, and he made them in the due course of his official duties, and injury resulted therefrom, it could hardly be said that he would be liable therefor; but, if he acted, as appellees contend, wholly without authority, he would then be liable for every such act contrary to, or in excess of, the authority conferred upon him by virtue of his official position. 29 Cyc 1441.

Appellees say that, because of the acquiescence of the appellant in the nuisance alleged to have been created by the appellees from the year 1910 until the time of bringing this action, which was in the year 1914, no injunction should now be entered; but it is held in the case of *Merchants Mut. Tel. Co.* v. *Hirschman* (1909), 43 Ind. App. 283, 290, 87 N. E. 238, that the doctrine of acquiescence does

not apply to a nuisance unless it has continued for twenty years.

We find no averment in the complaint that the appellees or any one of them at the time of the commencement of this action had any control over the dam in question, or that they were at said time maintaining it or had any right to destroy it or molest it. Without such averments and the proof thereof, we do not see how the appellant expects to obtain the equitable relief by way of abatement and injunction which he seeks by his complaint.

In its present form we hold that the complaint is sufficient for the recovery of damages against the defendants, but that it is insufficient for the equitable relief by way of abatement and injunction which the plaintiff seeks, and under the authority of *Miller* v. *Gates* (1916), 62 Ind. App. 37, 112 N. E. 538, we hold that the complaint, although insufficient for injunctive relief, states facts sufficient to entitle the plaintiff to a judgment for damages, and therefore it will withstand the demurrer for want of facts. The demurrer to the complaint should have been overruled.

The judgment is reversed, with instructions to the trial court to overrule the demurrer to the complaint, and for further proceedings.