**COOPER v. O'CONNOR et al.***

No. 6956.

United States Court of Appeals for the
District of Columbia.

Decided June 27, 1938.

* Writ of certiorari denied 59 S.Ct. 146, 83 L.Ed. ——.

Richard L. Merrick and Wade H. Cooper, both of Washington, D. C., for appellant.

H. Winship Wheatley, Leslie C. Garnett, U. S. Atty., John J. Wilson, Asst. U. S. Atty., Swagar Sherley, Charles F. Wilson, and Henry B. Weaver, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

MILLER, Associate Justice.

Appellant, prior to 1934, was president and a director of a trust company and two banking corporations. During the months

of January and March, 1934, a grand jury of the District of Columbia returned three indictments against appellant, charging him with violations of the banking laws of the United States. He went to trial on one indictment and was acquitted. Thereupon, the United States District Attorney entered a nolle prosequi of the other two. In 1936, appellant filed a declaration in the lower court alleging that the three indictments had been returned by the grand jury as a result of acts of appellees; charging appellees with malicious prosecution—jointly, severally, and as conspirators; and seeking damages. Appellees demurred to the declaration; their demurrers were sustained and judgment was entered in their favor; whereupon this appeal followed.

Appellees were sued in their individual capacities and not as officers and employees of the United States; and the declaration does not disclose the office held by each of them. The lower court, however, had power to take judicial notice of appellees' official capacities, as well as the extent of their authority and the scope of their duties.[1] On this appeal, appellant admits that O'Connor was Comptroller of the Currency of the United States; Baldwin was Receiver of the Commercial National Bank of Washington in the District; Barse was General Counsel for the Division of Insolvent Banks of the Treasury Department, and since February 4, 1936, has been, and now is, General Counsel for the Comptroller of the Currency; Lyons was Deputy Comptroller of the Currency of the United States; Awalt was Deputy Comptroller of the Currency of the United States; Rover was United States Attorney for the District of Columbia; Goldstein was Assistant United States Attorney for the District of Columbia. Appellant, in his brief, concedes, moreover, that the court may take judicial notice of the official position of appellees and of their duties, except as to ap-

pellee Simon. But the brief states that the issue whether judicial notice may be taken of the latter's official position is unimportant, and it further states as a matter of fact that appellee Simon was a Special Agent of the Bureau of Investigation. Accordingly, we shall assume that this was the case for the purpose of deciding the broader issues primarily argued by appellant.

In view of the history of the case, we are inclined to decide it upon its merits, and for that reason assume, also, that appellant is entitled to contend, as he does on this appeal, that when a public officer acts outside the scope of his authority *or* acts in a wanton, malicious and unlawful manner and, in either event, injures a private citizen, he is liable in an action for damages. He contends that in the present case all the appellees acted in a wanton, malicious and unlawful manner, and that some of them acted outside the scope of their official authority.

It may be argued persuasively that all public officers should be required to answer a declaration such as that of appellant and respond on the merits. But the courts have been unwilling to go so far. The situation is one in which a serious conflict arises between considerations of public policy: One, the protection of the individual citizen against oppressive official action, and the other, the protection of the whole people by protecting their officers against vindictive and retaliatory damage suits, in order to insure their fearless and effective administration of the law. Randall v. Brigham, 7 Wall. 523, 536 et seq., 19 L.Ed. 285.

There is a general rule that a ministerial officer who acts wrongfully, although in good faith, is nevertheless liable in a civil action and cannot claim the immunity of the sovereign.[2] There is also a general rule that if any officer—ministerial or oth-

---

[1] See Keyser v. Hitz, 133 U.S. 138, 146, 10 S.Ct. 290, 33 L.Ed. 531 (Deputy Comptroller of the Currency); MacKusick ex rel. Pattavina v. Johnson, 1 Cir., 3 F.2d 398 (Second Assistant Secretary of Labor); Roth v. Baldwin, 64 App.D.C. 90, 74 F.2d 1003, certiorari denied, 295 U.S. 737, 55 S.Ct. 649, 79 L.Ed. 1684 (Deputy Comptroller of the Currency); Anderson v. Rohrer, D.C.S.D.Fla., 3 F.Supp. 367 (United States District Attorney).

[2] Tracy v. Swartwout, 10 Pet. 80, 95, 99, 9 L.Ed. 354; Little v. Barreme, 2

Cranch 170, 2 L.Ed. 243. See Philadelphia Co. v. Stimson, 223 U.S. 605, 618 et seq., 32 S.Ct. 340, 56 L.Ed. 570; American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 108, 110, 23 S.Ct. 33, 47 L.Ed. 90; Hopkins v. Clemson Agricultural College, 221 U.S. 636, 642, 643, 33 S.Ct. 654, 55 L.Ed. 890, 35 L.R.A., N.S., 243; Sloan Shipyards v. United States Shipping Board Emergency Fleet Corp., 258 U.S. 549, 566–568, 42 S.Ct. 386, 66 L.Ed. 762; Bates v. Clark, 95 U.S. 204, 24 L.Ed. 471; Cammeyer v. Newton, 94 U.S. 225, 234, 235, 24 L.Ed. 72;

erwise—acts outside the scope of his jurisdiction and without authorization of law, he is liable in an action for damages for injuries suffered by a citizen as a result thereof. See Bradley v. Fisher, 13 Wall. 335, 351–352, 20 L.Ed. 646.[3] On the contrary, if the act complained· of was done within the scope of the officer's duties as defined by law, the policy of the law is that he shall not be subjected to the harassment of civil litigation or be liable for civil damages because of a mistake of fact occurring in the exercise of his judgment or discretion,[4] or because of an erroneous construction and application of the law.[5] This rule of immunity was first applied and has been most universally observed in the case of judges, presumably because considerations of public policy operate most strongly in their favor. But even as to them the rule does not operate in cases in which they act without jurisdiction over the subject-matter. Bradley v. Fisher, supra, at page 351. The first question to be decided, therefore, is whether the acts complained of in the present case come within the general scope of the duties of the several appellees.

In substance, the specific acts alleged to have been committed by appellees were as follows: (1) appearing before a grand jury of the District of Columbia and falsely, maliciously and without probable cause accusing appellant of having committed crimes in violation of the Federal banking laws; thus causing the grand jury to return indictments charging him with the commission of such. crimes; (2) causing appellant, in order to avoid imprisonment, to give bail bond for his appearance; (3) causing a nolle prosequi to be entered of two of the indictments, without the knowledge, consent, or procurement of appellant. The act last complained of was limited in

the declaration to the United States Attorney for the District of Columbia. The alleged act of causing appellant to procure a bail bond in order to avoid imprisonment may be disregarded; it was the act of appellant himself, done in pursuance of rights guaranteed to him by law. The only sense in which appellees could be said to have caused it, is indirectly, through the return of indictments against appellant. This allegation, therefore, stands or falls with the allegations concerning accusations made to the grand jury. As for the remaining allegations we may properly take judicial notice of the official duties of each of the appellees and thus determine whether the acts charged in the declaration fell within the general scope of their authority.

Considering first appellees Rover and Goldstein, it is obvious that all the acts charged came within the scope of their official duties as District Attorney and Assistant District Attorney, respectively (§ 771, R.S. (28 U.S.C.A. § 485); Richbourg Motor Co. v. United States, 281 U.S. 528, 534–535, 50 S.Ct. 385, 388, 389, 74 L.Ed. 1016, 73 A.L.R. 1081); not only as concerned prosecution (United States v. Winston, 170 U.S. 522, 18 S.Ct. 701, 42 L.Ed. 1130; United States v. Morgan, 222 U.S. 274, 32 S.Ct. 81, 56 L.Ed. 198), but also the power to enter a nolle prosequi, dismiss, or refuse to prosecute.[6] Moreover, as the allegation concerning the entry of a nolle prosequi was limited to the District Attorney, and as that act was clearly within the scope of his authority, the only acts complained of which remain to be considered in connection with the other appellees consist of their appearing before a grand jury, accusing appellant of crimes, and causing indictments to be found against him.

---

Belknap v. Schild, 161 U.S. 10, 18, 16 S. Ct. 443, 40 L.Ed. 599; Scheer v. Moody, D. C. ·Mont., 48 F.2d 327, 330.

[3] See, also, Overmyer v. Barnett, 70 Ind.App. 569, 583, 123 N.E. 654, 658; Russell v. Considine, 101 Kan. 631, 635-1. 636, 168 P. 1095, 1097; Ray v. Dodd, 132 Mo.App. 444, 448, 112 S.W. 2, 3.

[4] Kendall v. Stokes, 3 How. 87, 98, 11 L.Ed. 506; De ·Arnaud v. Ainsworth, 24 App.D.C. 167, 178, 5 L.R.A.,N.S., 163; Mellon v. Brewer, 57 App.D.C. 126, 130, 18 F.2d 168, 172, 53 A.L.R. 1519, certiorari denied, 275 U.S. 530, 48 S.Ct. 28, 72 L.Ed. 409; Brown v. Rudolph, 58 App.D.C. 116, 25 F.2d 540, certiorari denied, 277 U.S. 605, 48 S.Ct. 601, 72 L. Ed. 1011.

[5] Standard Nut Margarine Co. v. Mellon, 63 App.D.C. 339, 72 F.2d 557, certiorari denied, 293 U.S. 605, 55 S.Ct. 124, 79 L.Ed. 696; Lang v. Wood, 67 App.D. C. 287, 92 F.2d 211.

[6] Confiscation Cases, 7 Wall. 454, 19 L.Ed. 196; .United States v. Woody, D. C. Mont., 2 F.2d 262; United States v. Stowell, C. C. Mass., 27 Fed.Cas. p. 1350, No. 16,409; United States v. Schumann, C. C. Calif., 27 Fed.Cas. p. 984, No. 16,235; United States v. Watson, C.C.S.D.N.Y., 28 Fed.Cas. p. 501, No. 16,652. See Felder v. United States, 2 Cir., 9 F.2d 872, 874, certiorari denied, 270 U.S. 648, 46 S.Ct. 348, 70 L.Ed. 779; United States v. Corrie, C.C.S.C., 25 Fed. Cas. p. 658, No. 14,869.

Closely related to the district attorney are those officers who investigate crimes, detect criminals and act generally in aid of prosecution under the supervision of the district attorneys. Included in this group is appellee Simon, agent and investigator of the Federal Bureau of Investigation, a unit of the Department of Justice. The acts alleged fall clearly within the scope of his duties as prescribed by the Act of March 1, 1921, 41 Stat. 1175, as amended (5 U.S.C. A. § 300), and by virtue of which the Attorney General appointed him to his office.

We are equally satisfied that the alleged actions of appellees O'Connor, Lyons, Awalt, Barse and Baldwin were within the scope of authority of each of them. Section 324, R.S., as amended (12 U.S.C.A. § 1), provides that: "There shall be in the Department of the Treasury a bureau charged with the execution of all laws passed by Congress relating to the issue and regulation of a national currency secured by United States bonds and, under the general supervision of the Board of Governors of the Federal Reserve System, of all Federal reserve notes, the chief officer of which bureau shall be called the Comptroller of the Currency and shall perform his duties under the general directions of the Secretary of the Treasury." Thus, the Comptroller has been vested with general administrative powers and duties—even though they may be judicial in character—for the administration of the national banking laws. Altman v. McClintock, D.C. Wyo., 20 F.2d 226, 231, appeal dismissed, 9 Cir., 28 F.2d 1007. In this capacity he is charged with the duty of supervising national banks. It is within his power, when he deems it necessary, to take possession of the assets of a bank and assume control of its operations. United States v. Weitzel, 246 U.S. 533, 540, 38 S.Ct. 381, 62 L.Ed. 872. For this purpose he may appoint a receiver and place him in complete charge, as directed by § 5234, R.S. (12 U.S.C.A. § 192). The duties of a receiver appointed by the Comptroller, as set out in § 5234, R.S. (12 U.S.C.A. § 192) are, and are intended to be, comprehensive and inclusive. "The re-ceiver, unlike a president, director, cashier, or teller, is an officer, not of the corporation, but of the United States." [Italics supplied] United States v. Weitzel, supra, at page 541, 38 S.Ct. at page 382. See, also, Port Newark National Bank v. Waldron, 3 Cir., 46 F.2d 296.

Relying upon the presumption that a public officer acts within the authority conferred upon him and in accordance therewith—in the absence of allegation or proof to the contrary[7]—there is no reason to doubt that appellees Lyons, Awalt and Barse were acting within the authority conferred upon them by their superior officers in the present case. Moreover, as to appellee Barse, we take judicial notice of the fact that a general counsel must have knowledge of affairs as wide in scope as those officials whom he serves and that it is customary for such legal advisers to participate actively in such acts of administration, supervision, and control as are necessary for the proper performance of the duties of the Comptroller and his deputies.

It is not necessary—in order that acts may be done within the scope of official authority—that they should be prescribed by statute (United States v. Birdsall, 233 U.S. 223, 230–231, 34 S.Ct. 512, 58 L.Ed. 930); or even that they should be specifically directed or requested by a superior officer. Mellon v. Brewer, 57 App.D.C. 126, 129, 18 F.2d 168, 171, 153 A.L.R. 1519, certiorari denied, 275 U.S. 530, 48 S.Ct. 28, 72 L.Ed. 409. It is sufficient if they are done by an officer "in relation to matters committed by law to his control or supervision." [Italics supplied] (Standard Nut Margarine Co. v. Mellon, 63 App.D.C. 339, 341, 72 F.2d 557, 559, certiorari denied, 293 U.S. 605, 55 S.Ct. 124, 79 L.Ed. 696); or that they have "more or less connection with the general matters committed by law to his control or supervision." [Italics supplied] (Spalding v. Vilas, 161 U.S. 483, 498, 16 S. Ct. 631, 637, 40 L.Ed. 780; and see Lang v. Wood, 67 App.D.C. 287, 288, 92 F.2d 211, 212); or that they are governed by a lawful requirement of the department under whose authority the officer is acting.[8]

---

[7] Norris v. United States, 257 U.S. 77, 82, 42 S.Ct. 9, 11, 66 L.Ed. 136; MacKusick ex rel. Pattavina v. Johnson, supra note 1, at page 401; Keyser v. Hitz, supra note 1; Ex parte Tsuie Shee, D.C.N.D.Cal., 218 F. 256; In re Jem Yuen, D.C.Mass., 188 F. 350, 354.

[8] United States v. Birdsall, 233 U.S. 223, 231 et seq., 34 S.Ct. 512, 58 L.Ed. 930; United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; United States v. Smull, 236 U.S. 405, 35 S.Ct. 349, 59 L.Ed. 641. See, also, Norris v. United States, 257 U.S. 77, 81–82, 42 S.Ct. 9, 11, 66 L.Ed. 136; Maryland Casualty Co. v. United States, 251 U.S. 342,

The administration of criminal justice would be impossible without the active participation of public officials representing the departments concerned with the enforcement of particular laws. It requires no definite specification of duty to authorize officers such as these to cooperate with the officers of the United States Department of Justice and with the United States District Attorney in the initiation and prosecution of criminal cases arising within the scope of their official duties. By reason of their performance of duties clearly assigned, the facts and evidence which suggest criminal conduct upon the part of bank officials are revealed to such officers. It is the duty of all citizens to reveal such evidence, of which they may have knowledge, at the risk of being guilty of misprision of felony for failing to do so.[9] In the case of an official, his failure to act under such circumstances would, in addition, constitute serious malfeasance in office. In the present case, appellees were charged with responsibility for the collection and conservation of the assets of a bank. It would be absurd to contend that the duties of such an officer—so charged and so peculiarly aware of facts suggesting that certain persons were engaged in the spoliation of those very assets—should stop abruptly at the point where the initiation of criminal proceedings became necessary to protect such assets. 21 Ops. Atty. Gen. 133; 21 Ops. Atty. Gen. at page 509. As observed by the Court in United States v. Birdsall, supra, at page 235, 34 S.Ct. at page 516: "* * * in determining the scope of official action regard must be had to the authority conferred; and this, as we have seen, embraces every action which may properly constitute an aid in the enforcement of the law." This language is equally applicable to the present case. The rules and regulations issued by the Comptroller of the Currency expressly provide for the reporting of evidence indicating criminal violations of the law by bank officers.[10] These rules and regulations have been upheld as being within the authority of the Comptroller. Altman v. McClintock, supra. They have the force and effect of law (Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 157, 64 L.Ed. 297), and are judicially noticed. See Caha v. United States, 152 U.S. 211, 221, 14 S.Ct. 513, 38 L. Ed. 415.

Appellant next contends that in any event he is entitled to maintain this action if appellees' acts were wanton and malicious. His contention might be correct, other necessary factors being present, if it were applied to one not an official, even though the malicious prosecution complained of had been "instituted in the appropriate court, and carried on with every formality known to the law." White v. Nicholls, 3 How. 266, 289, 11 L.Ed. 591. But, although the courts were reluctant to recognize and extend the exception,[11] it is now generally recognized that, as applied to some officers at least, even the absence of probable cause and the presence of malice or other bad motive are not sufficient to impose liability upon such an officer who acts within the general scope of his authority. And the fact that an overzealous or unprincipled officer may get a personal pleasure out of the suffering of a criminal is not sufficient to offset the interest of all the people in having the criminal brought to justice. See Spalding v. Vilas, supra, at page 499, 16 S.Ct. 631. Hence, the officer is entitled to the protection which the law throws about him, not because the law is concerned with his personal immunity but because such immunity tends to insure zealous and fearless administration of the law.

This rule of immunity is recognized in all jurisdictions, to relieve from such liability judges of courts of superior or general jurisdiction as distinguished from judges of courts not of record or justices of the peace. Bradley v. Fisher, 13 Wall.

---

349, 40 S.Ct. 155, 157, 64 L.Ed. 297; Caha v. United States, 152 U.S. 211, 220, 14 S.Ct. 513, 38 L.Ed. 415; Haas v. Henkel, 216 U.S. 462, 480, 30 S.Ct. 249, 54 L.Ed. 569, 17 Ann.Cas. 1112; Daniels v. United States, 9 Cir., 17 F.2d 339, 343, certiorari denied, 274 U.S. 744, 47 S. Ct. 591, 71 L.Ed. 1325; Altman v. McClintock, D.C.Wyo., 20 F.2d 226, 231, appeal dismissed, 9 Cir., 28 F.2d 1007; Bellefield Co. v. Heiner, 3 Cir., 25 F.2d 560, 563.

[9] § 5390, R.S. as amended, 18 U.S.C.A. § 251.

[10] Instructions to National Bank Receivers (1924) 79.

[11] Dinsman v. Wilkes, 12 How. 389, 402, 13 L.Ed. 1036: "The rule is not of a character to recommend it to favor; nor to induce a court of justice to extend it beyond the limits to which it has heretofore been confined."

335, 20 L.Ed. 646; Alzua v. Johnson, 231 U.S. 106, 111, 34 S.Ct. 27, 58 L.Ed. 142. Although some jurisdictions have declined to extend it even to prosecuting attorneys in cases in which malice is present,[12] the Federal rule is to the contrary.[13] Blackstone stated the reason for the rule as applied to prosecutors as follows: " * * * it would be a very great discouragement to the public justice of the kingdom, if prosecutors, who had a tolerable ground of suspicion, were liable to be sued at law whenever their indictments miscarried.[14] In Yaselli v. Goff, 2 Cir., 12 F.2d 396, 56 A.L.R. 1239, affirmed 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395, the rule was so applied as to extend immunity to a special assistant to the Attorney General. There can be no question that appellees Rover and Goldstein come clearly within the reasoning of that case.

In several of the cases in which the rule of immunity has been applied the rationalization used has been that the particular defendant was a judicial officer,[15] or was engaged in a judicial determination,[16] or was so closely associated with the judicial process as to make necessary his protection from harassment in order to protect the judicial process.[17] It must be admitted that this rationalization does not apply with equal force to the appellees, other than Rover and Goldstein. Even police, detectives and investigators—the group into which Simon falls—are generally not trained for participation in judicial determinations; and are sometimes apt to become oppressive in administration of their duties, unless kept under close restraint by prosecutors and judges. In the case of the other appellees, it can be persuasively argued that even though their assistance was necessary for successful prosecution, it was possible for the Attorney General or the United States District Attorney to appoint them special assistants for the purpose, as was done in the case of Yaselli v. Goff, supra; thus avoiding an undue extension of a rule which may come to be a dangerous limitation upon the rights of a free people.

But whatever these considerations may indicate as to the wisdom of legislative limitation, the rule as now declared in many cases has been applied, not only to officials judicial and quasi-judicial, but to executive officers generally, such as the Postmaster General,[18] the Secretary[19] and Assistant Secretary of the Treasury,[20] Members of the United States Parole Board, the Parole Executive, the Warden of a Federal penitentiary, the Director of the Bureau of Prisons,[21] the Commissioners of the District of Columbia,[22] the Chairman of the Tariff Commission,[23] a building inspector,[24] the United States Commissioner of Indian Affairs,[25] and the Chief of Record and Pension Office of the War Department.[26]

The reason now given for the rule is simply one of public policy. "Otherwise

---

[12] Leong Yau v. Carden, 23 Hawaii 362, 369. See Childs, Liability of Prosecuting Officers for Official Acts, 9 Law. and Bank. 275; Note, 73 U.Pa.L.Rev. 300; 25 J.Crim.L. 118.

[13] Anderson v. Rohrer, D.C.S.D.Fla., 3 F.Supp. 367; Yaselli v. Goff, 2 Cir., 12 F.2d 396, 56 A.L.R. 1239, affirmed, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395.

[14] 3 Bl.Comm. *126.

[15] Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646; Randall v. Brigham, 7 Wall. 523, 19 L.Ed. 285; Fray v. Blackburn, 3 B. & S. *576 (judges).

[16] Yaselli v. Goff, supra note 13 (special assistant to the Attorney General); Smith v. Parman, 101 Kan. 115, 165 P. 663, L.R.A. 1917F, 698; Griffith v. Slinkard, 146 Ind. 117, 44 N.E. 1001 (prosecuting attorneys).

[17] Sidener v. Russell, 34 Ill.App. 446; Griffith v. Slinkard, supra note 16; Engelke v. Chouteau, 98 Mo. 629, 12 S.W. 358 (grand jurors); Hunckel v. Voneiff, 69 Md. 179, 14 A. 500, 9 Am.St.Rep. 413, rehearing denied 17 A. 1056; Sebree v.

Thompson, 126 Ky. 223, 103 S.W. 374, 11 L.R.A.,N.S., 723, 15 Ann.Cas. 770; Dawkins v. Rokeby, L.R. 7 H.L. 744 (witnesses).

[18] Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780.

[19] Mellon v. Brewer, 57 App.D.C. 126, 18 F.2d 168, 53 A.L.R. 1519, cert. denied, 275 U.S. 530, 48 S.Ct. 28, 72 L.Ed. 409.

[20] Standard Nut Margarine Co. v. Mellon, 63 App.D.C. 339, 72 F.2d 557, cert. denied, 293 U.S. 605, 55 S.Ct. 124, 79 L. Ed. 696.

[21] Lang v. Wood, 67 App.D.C. 287, 92 F.2d 211.

[22] Brown v. Rudolph, 58 App.D.C. 116, 25 F.2d 540, cert. denied, 277 U.S. 605, 48 S.Ct. 601, 72 L.Ed. 1011.

[23] Smith v. O'Brien, 66 App.D.C. 387, 88 F.2d 769.

[24] White v. Brinkman, 23 Cal.App.2d 307, 73 P.2d 254.

[25] Farr v. Valentine, 38 App.D.C. 413, Ann.Cas.1913C, 821.

[26] De Arnaud v. Ainsworth, 24 App. D.C. 167, 5 L.R.A.,N.S., 163.

the perfect freedom which ought to exist in discharge of public duty might be seriously restrained, and often to the detriment of the public service." De Arnaud v. Ainsworth, 24 App.D.C. 167, 178, 5 L.R.A., N.S., 163. See, also, United States to Use of Parravicino v. Brunswick, 63 App. D.C. 65, 68, 69 F.2d 383, 386. As was pertinently said in an English case: "* * * Does an action lie against a man for maliciously doing his duty? I am of opinion that it does not; * * *" Dawkins v. Paulet, L.R. 5 Q.B. 94, 114.

Appellant seeks to avoid the effect of this widespread extension of the rule by pointing out that in some of the cases the rule of immunity—as applied to executive officers—was limited to heads of departments. Spalding v. Vilas, supra; Mellon v. Brewer, supra. During recent years, however, a trend is definitely observable extending the application of the rule to minor executive officers.[27] It is obvious that the effect of this trend is to cut down proportionately the scope of the general rule which makes officials liable for tortious injuries and which denies to them the immunity of the sovereign. It may be argued that if this trend is allowed to prevail, it will too greatly imperil the rights of the individual citizen. Just as it is the "hard-boiled top-sergeant" who—in his interpretation of the orders of the high command—makes life miserable for the private in the rear rank, so it is the comparable minor official who—in civil life—is largely responsible for long-existing impressions in the minds of private citizens concerning "the insolence of office."

█ On the other hand, to hold that only the heads of departments should be immune from liability under the rule would defeat its purpose. We know that heads of the Federal departments do not themselves engage in such activities as are here involved. Their administrative duties make such participation impossible. There must be, necessarily, delegation of authority for such purposes. When the act done occurs in the course of official duty of the person duly appointed and required to act, it is the official action of the department; and the same reason for immunity applies as if it had been performed by the superior officer himself. De Arnaud v. Ainsworth, supra, at pages 177, 181; United States to Use of Parravicino v. Brunswick, supra. To hold otherwise would disrupt the government's work in every department. "Its head can intelligently act only through subordinates." Farr v. Valentine, 38 App.D.C. 413, 420, Ann.Cas.1913C, 821. The fact that our country has grown so great as to require a multiplication of governmental officials in some small measure proportionate thereto, cannot obscure the fact that the duties performed are the same as those once performed by heads of departments,[28] and that fearless performance of official duty is as essential today as it was yesterday.

Therefore, we conclude that as the acts of appellees were performed in the discharge of their official duties, the motives with which those duties were performed are immaterial, and appellant's contention must fail.

█ The question next arises whether appellant can maintain his action against appellees by joining them and alleging that they engaged in a conspiracy. Accusing appellees jointly, or by way of a count in conspiracy, gives appellant's case no more virtue than if he had proceeded against each appellee singly. The reason for the rule of immunity applies equally in one case as in the other. The essence of conspiracy is an agreement—together with an overt act—to do an unlawful act, or a lawful act in an unlawful manner. We have seen that

---

[27] Yaselli v. Goff, supra note 13; United States to Use of Parravicino v. Brunswick; 63 App.D.C. 65, 68, 69 F.2d 383, 386; Lang v. Wood, supra note 21. See also, cases cited in notes 22-26, supra.

[28] Cummings and McFarland, Federal Justice (1937) 80: "Not only were there no records but the government provided neither an office nor clerical assistance. As far back as December 1791, Attorney General Randolph, through President Washington, without success had urged Congress to provide a clerk. President Madison, when it became evident that residence at Washington had greatly increased the Attorney General's labor, in 1816 urged that he be supplied with 'the usual appurtenances to a public office.' A bill to provide offices and a clerk came to the Senate floor on January 10, 1817."

Id. at p. 81: "Thirty years had passed since the federal government was first organized. Now, Congress provided offices in the Treasury and a clerk at $1,-000 a year, with an additional small contingent fund of $500 for such essentials as stationery, fuel, and 'a boy to attend the menial duties.'"

each act done in the present case was lawful and privileged upon the part of each appellee. Their combining to perform those acts was lawful[29] and was essential to fearless and effective administration of the law. The complexity of criminal cases such as arise under the national banking laws, and the necessity for cooperative action between officials of different departments, make it necessary to apply the immunity rule in favor of these appellees whether they are accused severally, jointly, or in terms of a conspiracy, so long as each is proceeding within the scope of his official duties. In our view these appellees were so acting in the present case. Yaselli v. Goff, supra.

We have given careful consideration to appellant's other assignments and find them to be without merit.

Affirmed.

---

*Writ of certiorari denied 59 S.Ct. 146, 83 L.Ed. —.

[29] Nalle v. Oyster, 230 U.S. 165, 183, 33 S.Ct. 1043, 57 L.Ed. 1439.