constituted government law-enforcement investigator.

With reference to such status the Commission Council of the City of New Orleans, on April 24, 1953, and pursuant to Ordinance 18,531 C.C.S., appointed a Special Citizens' Investigating Committee (S.C.I.C.), granted it general authority to investigate the police department of that municipality, and authorized it to employ investigative personnel for such purpose. Thereafter, S.C.I.C. employed relator as executive director and chief investigator; it clothed him with all of its investigative duties and powers; and it gave approval to his use of confidential investigators or informers, directing that *"their identities must not be disclosed* unless failure to do so would critically hamper the work and objectives of this Committee." (Italics mine.)

True, the ordinance creating S.C.I.C. stated that reports of the Committee "shall first be delivered to the Orleans Parish Grand Jury through its Foreman for such action as that body shall consider proper." But there is nothing in this provision (with which S.C.I.C. complied), or in any other provisions of the ordinance, that is destructive of or antagonistic to the privilege protecting the confidential relationships created by relator in his law-enforcement investigations with the complete approval of the municipal government's official committee.

I respectfully dissent.

**79 So.2d 87**

**Anna L. O'ROURKE**

v.

**Edward J. O'ROURKE et al.**

**No. 41735.**

Feb. 14, 1955.

On Motion to Dismiss March 3, 1955.

F. A. Kullman, Kullman & Lang and Seme S. Klegar, New Orleans, for Anna L. O'Rourke, plaintiff-appellee.

J. T. Prowell, Prowell, Viosca & Reuter, New Orleans, for Dr. C. Grenes Cole, respondent.

FOURNET, Chief Justice.

Miss Anna L. O'Rourke having secured a joint and solidary judgment in the district court against her brother Edward J. O'Rourke and Dr. C. Grenes Cole in the sum of $7,500 [1] as damages for her wrongful seizure and commitment to the City Hospital for Mental Diseases in New Orleans, Louisiana, which judgment was reversed by the Court of Appeal for the Parish of Orleans as to Dr. Cole and reduced to $1,000 as to O'Rourke, applied for and was granted certiorari to the end that we might review that judgment in so far as it related to the liability of Dr. Cole. 69 So.2d 567.

According to the record it appears that on July 8, 1946, Edward J. O'Rourke and one of his brothers (now deceased) called at the office of the then coroner of the Parish of Orleans, Dr. C. Grenes Cole, where, after relating certain facts with respect to their sister Anna L. O'Rourke, the plaintiff, Edward J. O'Rourke secured from Dr. Cole, who had neither examined nor seen Miss O'Rourke, a document the pertinent portion of which reads:

[1]. This award was based upon the recommendation of the jury before which the case was tried.

"I certify, that I have examined into the mental condition of Anna L. O'Rourke * * * and believing her to be insane, I would recommend her/ Commitment to City Mental Hospital for observation · * * *."

At the time of its issuance Dr. Cole informed O'Rourke this commitment order, to be effective, must be executed within 48 hours. Efforts to pick up Miss O'Rourke during the remainder of that day and during the daylight hours of July 9, as well as during the early part of the evening of July 9[2] proving fruitless, O'Rourke, realizing the time during which this order might be executed was about to expire, arranged for two policemen to meet him in front of the residence of his sister between 11:30 and 12:00 p. m. that night. She was aroused from sleep by the policemen and taken to the City Mental Hospital, being entered there at 12:30 a. m. on July 10, 1946. She was given a somewhat cursory preliminary examination by two doctors connected with the hospital later during the morning and, apparently after a consultation with Dr. Cole around noon on July 10, 1946, she was released shortly thereafter in the custody of her sister-in-law. This joint and solidary suit against Dr. Cole and Edward .J. O'Rourke for damages for her illegal re-

straint, commitment, and confinement in the mental hospital followed.

The plaintiff's action against her brother is predicated on allegations that he acted with malice and without probable cause, while her action against Dr. Cole is based on the allegation that he issued the certificate in question without examining her and without making an independent inquiry or investigation, constituting gross negligence and being in direct violation of Act No. 303 of 1944, LSA–R.S. 28:1 et seq., the pertinent part of which reads:

"*Coroner's Commitment:* Upon the application of a near relative, or in the absence of relatives, a near friend, curator or other responsible citizen, accompanied by a certificate signed by the coroner *and one other qualified physician,* stating that a person is mentally ill, mentally defective, epileptic or inebriate, and is in need of observation or care in a mental hospital, the superintendent or chief officer of such hospital may receive such mental patient for such care and treatment as may be necessary. * * * The coroner and the other qualified physician who sign the accompanying certificate shall certify that * * * they have examined the patient within three days of the date of

---

2. Although Miss O'Rourke, as reflected by information contained in the certificate, was unemployed, she was at work during the daylight hours of July 8 and 9 in a job she had long held. During the early part of evening of July 9, she was acting as a judge in a beauty contest.

the application ` * ` * ` *`. The certificate shall further state the facts and sources of information *and personal observations* upon which their opinion is based." Section 12 of Article III, covering the examination, admission, commitment, and detention of mental patients. (Emphasis added.)

The Court of Appeal, holding that Act No. 303 of 1944 was unconstitutional, since it contained no enabling clause as required by Section 7 of Article III of the Constitution of 1921, LSA, concluded the action of the coroner was controlled by Act No. 34 of 1926, LSA–R.S. 33:1624 et seq., which did not expressly require him to examine personally the subject party prior to commitment, and, consequently, relieved him of any liability for the reason that he had acted in this case "without malice, with probable cause, and * * * his actions were such as would have been taken by any other reasonably prudent official acting in his capacity and on the same information." See, O'Rourke v. O'Rourke, La.App., 69 So.2d 567, 579.

Conceding, without deciding, that Act No. 303 of 1944 is unconstitutional, as held by the appellate court, we find no provision in our law in effect on July 8, 1946, authorizing the Coroner for the Parish of Orleans, or for any other parish, to issue the certificate issued in this case. Act No. 34 of 1926, according to its title, is an act prescribing the duties of the Coroner of the Parish of Orleans. It does not give that official the power to commit persons to mental institutions, but only the right and power to examine in all cases of alleged insanity "whenever in his opinion such examination is required by the public interest". Section 2. But when ordered by any district judge, it then becomes the coroner's mandatory duty to examine into the sanity of a designated person and to report the results of that examination to the judge. The only law on the statute books pertaining to this subject matter at the time this action arose— Act No. 68 of 1918—authorized district judges to commit persons suspected of being insane to the state's insane hospitals, after due examination of that person in his court and in his presence by two duly licensed and reputable physicians, *one of whom was the coroner*. That act also gave recognition to the method of commiting insane persons by Recorders of the City Courts of New Orleans upon affidavits, provided the coroner's certificate, as set out at great length in the act, was furnished.

Dr. Cole's action in the instant case was, therefore, illegal and unwarranted, and he is liable for the consequences thereof.

For the reasons assigned, the judgment of the appellate court, in so far as it relieves Dr. C. Grenes Cole of his joint and solidary liability with Edward J. O'Rourke is an-

nulled and set aside and the judgment of the Court of Appeals for the Parish of Orleans will be recast accordingly and to read as follows:

The judgment of the lower court is amended to reduce the sum awarded the plaintiff, Anna L. O'Rourke, from $7,500 to $1,000; in all other respects the judgment appealed from is affirmed, the defendants, Edward J. O'Rourke and Dr. C. Grenes Cole, to pay all costs.

Joint Motion to Dismiss.

PONDER, Justice.

On motion of J. T. Prowell, attorney for defendant-respondent in writ in the above entitled cause, and of Frederick A. Kullman, attorney for plaintiff Miss Anna L. O'Rourke, applicant in writ in the above entitled cause, and on suggesting to this Honorable Court that the judgment rendered by the Court of Appeals of the Parish of Orleans against the defendant Edward J. O'Rourke, as well as the judgment rendered in these proceedings against the defendant Dr. C. Grenes Cole have been satisfied in full and, accordingly, the application for re-hearing filed herein by C. Grenes Cole, defendant-respondent in writ, and these entire proceedings should be dismissed.

It is ordered that the application for re-hearing filed herein by defendant C. Grenes Cole and these entire proceedings be and the same are hereby dismissed.