156 So.2d 275 (1963)
Frederick DOLL, Sr.
v.
Henry DOLL.
No. 1126.
Court of Appeal of Louisiana, Fourth Circuit.
July 1, 1963.
Rehearing Denied October 2, 1963.
Dave Herman, Abraham, I. Kleinfeldt, Richard Dowling, New Orleans, for defendant-appellant.
Burton G. Klein, Donald S. Klein, William R. Klein, New Orleans, for plaintiff-appellee.
Before REGAN, YARRUT and HALL, JJ.
REGAN, Judge.
Plaintiff, Frederick Doll, Sr., instituted this suit to interdict the defendant, Henry Doll, his brother, predicated on the allegation that he was too mentally incompetent to administer his estate, which has been inventoried in the amount of $225,252.05, and requested that Joseph Doll, his son, who was also the defendant's nephew, be appointed *276 curator of his person and of his estate.
A nephew and two nieces of the defendant, namely, John Doll, Sr., Rita Mary Doll and Theresa Doll Cartner, intervened and opposed the interdiction on the ground that the defendant was quite capable of managing his own estate.
The defendant then answered and denied the necessity for his interdiction.
From a judgment pronouncing the defendant insane, interdicting him and dismissing the intervention, he has prosecuted this appeal.
While this appeal was pending, Joseph Doll was appointed curator of the interdict and Rita Doll was designated as his undercuratrix.
When this suit was filed in the year of 1962, the defendant was about 81 years of age, and prior to his retirement he had been employed for 52 years as a common laborer at a salary commensurate therewith, by the Bemis Bag Company. Despite the meager earnings emanating from the work of a common laborer, the defendant amassed an estate of approximately one-quarter of a million dollars. We shall omit, for the purposes of brevity, the interesting details thereof, but suffice it to say that for innumerable years he was engaged in making both mortgage and personal loans at very remunerative rates of interest. His fortune is now mute testimony of his former business acumen.
In any event, on August 19, 1962, the defendant was discovered in an unconscious condition in his home, where he resided alone. He was removed therefrom to the Touro Infirmary where a diagnosis revealed that he had incurred a cerebrovascular stroke and a mild fracture of the skull. On August 30, 1962, he was discharged from the hospital and removed to Mrs. Burnham's Nursing Home, since he was unable to care for himself.
This suit was instituted on August 27, 1962, and defendant was initially served through a curator ad hoc. The defective citation was subsequently cured through the medium of personal service.
The court appointed two physicians to examine the defendant, namely, Dr. William Super, a psychiatrist, and Dr. Aynaud Hebert, a general practitioner who specialized in obstetrics and gynecology. Dr. Hebert was the family physician of Joseph Doll, who had been designated by the court as the provisional curator.
The question which this appeal, in the last analysis, has posed for our consideration is whether the plaintiff has successfully carried the burden of proving the absolute necessity for the defendant's interdiction.
The Civil Code enumerates two causes which compel the judge to interdict a person and appoint someone to manage his estate. The rationale therefor is revealed by the following articles thereof:
"Art. 389. No person above the age of majority, who is subject to an habitual state of imbecility, insanity or madness, shall be allowed to take care of his own person and administer his estate, although such person shall, at times, appear to have the possession of his reason."
"Art. 422. Not only lunatics and idiots are liable to be interdicted, but likewise all persons who, owing to any infirmity, are incapable of taking care of their persons and administering their estates.
"Such persons shall be placed under the care of a curator, who shall be appointed and shall administer in conformity with the rules contained in the present chapter."
In interpreting Article 389, our appellate courts have asserted that three factors must concur before a judgment of interdiction will be pronounced. They are: *277 First, that the defendant is mentally incapable of administering his estate. Second, that the defendant is unable to care for his persons and, Third, that an actual necessity for the interdiction exists.[1]
In applying the above criteria to this case, the record reveals the existence of medical evidence which preponderates to the effect that the defendant is mentally incapable of administering his own estate because he now demonstrates poor judgment, a lack of orientation and serious lapses of memory.
Dr. William Super, director of psychiatry at Charity Hospital, examined the defendant on three occasions, namely, September 10 and October 2, 1962, and January 7, 1963. The last examination occurred two days before the trial hereof. Dr. Super, to be brief, was convinced that he possessed a "severe organic brain syndrome, such as would make * * * (him) * * * quite incompetent to handle his own affairs, legal or otherwise."
Dr. Super was also of the opinion that the defendant's mental condition was irreversible. Despite the fact that the defendant appeared "brighter" when he was examined in January, Dr. Super explained that patients afflicted with organic brain damage will reach a plateau where they appear to be better, but that recovery is impossible and a gradual mental decline is inevitable. When Dr. Super examined the defendant, he was unaware that he had incurred a mild skull fracture in August 1962. He conceded that a skull fracture could cause one's mind to be disoriented; however, it was his opinion that such a confused state would not persist over a period of weeks unless there was organic brain damage. He said the damage was caused by arteriosclerosis and possibly aggravated by the cerebro-vascular stroke which he also suffered in August.
Dr. Super's convictions and the diagnosis of organic brain damage were confirmed by Dr. Howard Karr, a neurologist, who also expressed the opinion that the defendant was mentally incapable of managing his own affairs and would not recover sufficiently to do so in the future.
Dr. Hebert, the other court appointed physician, did not conduct a mental status examination since he was not a psychiatrist; however, he too was of the opinion that the defendant demonstrated mental difficulties during the course of his examinations.
The defendant's only medical evidence consisted of the very weak testimony of Drs. Sydney Jacobs, an internist, and Julius Finkelstein, an optomologist. Both stated that the defendant responded sensibly when he was being treated by them. Dr. Jacobs, however, conceded that he was not qualified to administer a mental status test to the defendant.
The defendant was also examined by Dr. Max Sugar, a psychiatrist, at his own counsel's instigation; however this expert was not requested to testify. In oral argument before this court, the defendant's counsel conceded that Dr. Sugar's diagnosis of the defendant's mental condition coincided with that of Dr. Super.
Predicated on the foregoing evidence, the trial judge concluded that the defendant was mentally incapable of administering his own estate, which, of course, satisfies the first requisite for interdiction. Since the trial court omitted written reasons for judgment, we shall point out what the record reveals with respect to the other requisites.
Relative to the second prerequisite for interdiction, the plaintiff also established that the defendant is unable to take care of his person. In addition to medical opinion to this effect, two members of the staff of the nursing home where the defendant is now residing, confirmed that he constantly *278 requires the help of an attendant to generally care for him.
Finally, we must decide whether there exists a necessity for the defendant's interdiction. Perhaps this need was best illustrated by Dr. Super's testimony. It was his opinion that the defendant's poor memory and lack of judgment make him susceptible to being swindled if he is left in his own care. Dr. Super equated the defendant's present ability to manage his affairs to that of a ten year old child; therefore, it would be relatively easy to take advantage of him.
Counsel for the defendant argues that the actions of the defendant are those of a miser, as distinguished from a spendthrift. While this is true and is confirmed by the record, it must be recalled that the defendant has not managed his affairs since he was hospitalized in August of 1962. We do not think a court should withhold pronouncing a judgment of interdiction merely because the defendant has not publicly manifested, to his detriment, his incapacity to manage his person or his estate. In fact, the very purpose of the interdiction is to conserve and protect both the person and the property of the interdict where it is medically established, with absolute legal certainty, that he is incapable of doing so himself. Of course, if the reason for the interdiction should cease, the former interdict may have it revoked by exercising the same solemnities which were observed in pronouncing it.
We have assiduously examined and evaluated the testimony contained in this record since the author's philosophy,[2] as well as the rationale of the jurisprudence emanating from the pens of the appellate judges of this state, reveals an absolute reluctance to render a judgment of interdiction unless the evidence conclusively and unequivocally proves the necessity therefor. The reason for such caution is obvious. A judgment of interdiction is, in the final analysis, a pronouncement of civil death without the dubious advantage of an inscription thereof on a tombstone.
Since all of the prerequisites for interdiction have been fulfilled herein, we are of the opinion that the judgment of the trial court is correct.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] Landry v. Landry, 171 La. 280, 130 So. 866 (1930).
[2] See a discussion thereof in O'Rourke v. O'Rourke, La.App., 69 So.2d 567 at p. 581 (1953). Also see the Supreme Court's review thereof in 227 La. 262, 79 So.2d 87 (1955).