Phillip Leon **DELATTE**, Plaintiff,

v.

Dr. Charles R. **GENOVESE**, Defendant.

Civ. A. No. 66–844.

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 25, 1967.

Robert S. Cooper, Jr., Baton Rouge, La., for plaintiff.

Ralph L. Kaskell, Jr., New Orleans, La., for defendant.

RUBIN, District Judge:

Is an elected coroner responsible in damages under the Civil Rights Act of 1871[1] if he signs a commitment certificate stating that he has observed and examined a person and thinks that the person is in need of care and treatment for mental illness when he has not in fact observed or examined him? That is the issue raised by this motion for summary judgment.

The plaintiff, Phillip Leon Delatte, seeks to recover damages from the Coroner of Tangipahoa Parish, La.[2] He alleges that the coroner signed a certificate for Delatte's commitment stating that he had observed and examined Delatte when he had not in fact done so, and that, as a result, Delatte was taken into custody, confined to parish jail for four days, and detained at the East Louisiana State Hospital for about two and one-half months.

The material facts, as presented in affidavits, appear to be as follows:

On November 8, 1965, plaintiff's wife, Stella Cooper Delatte, signed an application for the observation and treatment of the plaintiff because he appeared to be suffering from a mental disease. The defendant signed a certificate stating that he had observed and examined the plaintiff, although, for the purposes of this motion, he concedes that he made neither observation nor examination. Judge Ben N. Tucker, of the 21st Judicial District Court of Louisiana, acting in reliance on the certificate, ordered the plaintiff to be committed. However, before the plaintiff was taken into custody, the plaintiff's wife decided that she did not want this to be done. She signed a statement to this effect, and no further action was taken.

On December 16, 1965, Mrs. Delatte again went to the defendant's office and again sought to have her husband committed. Again the defendant certified that he had examined and observed the plaintiff although he had not in fact done so. The defendant's certificate stated that he was of the opinion that the plaintiff was in need of observation, care and treatment for a mental illness. Based on this certificate, Judge Tucker ordered the plaintiff committed to East Louisiana State Hospital at Jackson, Louisiana. Mrs. Delatte signed a separate criminal affidavit charging that the plaintiff was insane, and in reliance on this affidavit Judge Tucker signed a separate order to arrest the plaintiff. The plaintiff was taken into custody by deputies of the Sheriff's Department of Tangipahoa

1. 42 U.S.C.A. § 1983. Jurisdiction is under 28 U.S.C.A. § 1343, which provides in part as follows:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \*

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

\* \* \*."

The Civil Rights Act of 1871 provides as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, sub-

jects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress."

2. The plaintiff originally joined as co-defendants Thomas I. Sanders, Sheriff of Tangipahoa Parish, and Donald Hoover, Oswell Johnson, and Sherman Landry, Deputy Sheriffs of Tangipahoa Parish. The motion to dismiss and motion for summary judgment filed by the Sheriff and the Deputy Sheriffs were granted at the time of oral argument because they admittedly acted on the basis of an arrest warrant, valid on its face; the only remaining motion is that of Dr. Genovese.

Parish and was later sent to the East Louisiana State Hospital.

The Louisiana Mental Health Law provides four methods of commitment to a mental hospital: (1) coroner's commitment, (2) judicial commitment, (3) emergency commitment, and (4) voluntary admission.[3] In this instance, the plaintiff was committed under the coroner's commitment provision. When this procedure is used, the statute requires that an application be submitted to the superintendent of a hospital, signed by a relative, and supported by a certificate signed by the coroner and another physician stating that they "have examined the patient within three days of the application and that he is in need of observation or care in an insitution."[4] "After complying with the above provisions the application for commitment [is] presented to the judge of the judicial district court or the civil district court for the parish from which the patient is to be committed, for his approval or disapproval."[5] Thus, there is no authority for the coroner to commit anyone directly to an institution because the application must be approved by the judge; this approval is usually given without a formal hearing.[6]

Delatte was taken into custody and committed on the basis of the judge's order. The plaintiff admits that the order was rendered by the judge in full compliance with the state statute. But on the record as it now stands Dr. Genovese violated his duties under the statute and this was the ultimate cause of the plaintiff's commitment to the East Louisiana State Hospital, although it is arguable that his arrest was based on Mrs. Delatte's criminal affidavit.

■ There can be no doubt that the plaintiff was deprived of his personal freedom and hence of his "rights, privileges, or immunities secured by the Constitution."[7] But did the coroner act "under color of" state law?

## COLOR OF LAW

In United States v. Classic,[8] the United States Supreme Court said, in interpreting similar language in another statute, that "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." And in interpreting the Civil Rights Act of 1871, the Court of Appeals for the Ninth Circuit said, in Marshall v. Sawyer,[9] at page 646, that:

"The defendants' conduct was engaged in under color of state law if they were clothed with the authority of the state and were purporting to act thereunder, whether or not the conduct complained of was authorized or, indeed, even if it was proscribed by state law. Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492; Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495."

But the defendant asserts that he was acting as a physician and not as a state official and hence was not acting under "color of law." Alternatively, he adopts the opposite position and asserts that he was acting as a coroner and, as such, in a

---

3. 28 LSA–R.S. § 50.

4. 28 LSA–R.S. § 52.

5. Ibid.

6. Ibid, "The application for commitment can be acted upon by the judge in open court or in chambers, in term time or in vacation, without the necessity [of] formally docketing and allotting said application."

7. The Louisiana Mental Health Statute, under which the plaintiff was committed, gives him the right to be observed and examined before the commitment. If he was deprived of his freedom without compliance with the requisite statutory procedure, he was denied due process of law.

8. 1941, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368; see also Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 and Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 2d 492.

9. 1962, 301 F.2d 639.

judicial capacity, and hence is immune to this suit. Neither argument entitles the coroner to the dismissal he here seeks.

The defendant cites cases in which other courts have found that physicians acted in their private capacity, not as public officers, and hence they did not act under color of law. But these cases are clearly distinguishable from the present situation in which Dr. Genovese signed as coroner under a state statute which requires the coroner to act. Thus, in Byrne v. Kysar [10] the plaintiff, who had been confined in a mental hospital, sued the doctor who executed the certificate that initiated a judicial inquiry into the plaintiff's mental condition, and the two doctors who were members of the court-appointed statutory commission which examined him. None of them was a public official. In affirming the District Court's dismissal of the plaintiff's action, the Court of Appeal for the Seventh Circuit said, at page 736, that "[The physician who executed the certificate] acted in his capacity of private physician * * * and not under color of law * * *." The doctors who examined the plaintiff at the Court's request were held to share the court's judicial immunity. But Dr. Genovese did not act as a private physician; he acted in his public capacity as coroner. Whether as coroner he was a judicial officer is another question which we shall examine shortly.

In Bartlett v. Weimer,[11] another commitment case, the defendant had acted as an officer of the court in giving his opinion as to the mental health of the plaintiff; and, while he was acting in such capacity he was protected by the doctrine of judicial immunity. The court went on to say, at page 862, "Moreover, if Dr. Weimer was not a judicial officer but acting as a private citizen, still it is well-settled that the right not to have private individuals swear falsely in a state court is not a right secured by the Federal Constitution."

In Joyce v. Ferrazzi,[12] it was the family doctor who signed the commitment request under the appropriate state statute. The court said, at page 933:

> "Since it indisputably appears from the record that the defendant doctor acted as a private practitioner in committing the plaintiff to the mental institution under the Massachusetts statute, the constitutional validity of which is not challenged, it follows that his action was that of a private citizen. * * * He is not a member of the class exposed to liability under § 1983."

Dr. Genovese, in signing the certificate which resulted in the plaintiff's commitment, was acting in his official capacity as coroner of Tangipahoa Parish, as required by 28 LSA–R.S. § 52,[13] and not as a private physician. He is alleged to have acted under, and to have misused, state power.[14]

## JUDICIAL IMMUNITY

Taking a cue from the Supreme Court's recent decision in Pierson v. Ray,[15] holding that judges have an absolute immunity to suit under Section 1983, the defendant argues that he shares the shelter of the judge's gown.[16] But Pierson v. Ray does not afford so wide a skirt

10. 7 Cir., 1965, 347 F.2d 734.

11. 7 Cir., 1959, 268 F.2d 860.

12. 1 Cir., 1963, 323 F.2d 931.

13. The certificate dated December 16, 1965. is signed as follows:
"Charles R. Genovese, Coroner of Tangipahoa Parish"

14. Whether this misuse of power was in good faith cannot be decided by this motion because this issue is disputed.

15. 1967, 386 U.S. 547, 86 S.Ct. 1213, 18 L.Ed.2d 288.

16. Although the defendant acted in his capacity as coroner and his duties in that capacity were defined by state law, the question whether the performance of these duties made him a judicial officer for purposes of the Civil Rights Act is to be determined by the standards of federal law.

to the robes. It extends immunity only to those "acts within the judicial role." [17]

When a coroner certifies that he has examined a person, he is not acting as a judge. "Courts have differed in their expressions of opinion as to whether a coroner acts in a judicial capacity. His acts in holding an inquest have been described as judicial, partly judicial, and quasi-judicial. On the other hand, it has been asserted that the coroner does not act judicially, or acts only ministerially, in holding an inquest, which is a mere finding and does not establish rights, and therefore his authority lacks the first element of judicial power. It has also been held that while at common law the office of the coroner is judicial in its nature, it is otherwise under a state constitution vesting the judicial powers in the courts therein named, for no judicial power can be exercised by any other authority." [18]

The defendant has cited the North Carolina case of Gillikin v. United States Fidelity & Casualty Co.[19] as authority for the proposition that the issuing of a certificate of commitment is really a judicial function. But this case holds only that the duty of determining whether an inquest is necessary is a judicial function. Even if we assume, arguendo, that an inquest is itself a judicial proceeding,[20] it is difficult to understand how the issuance of a certificate of commitment stating the fact that a particular person has been observed and examined is anything more than a ministerial function. It is the *fact* of examination that the coroner is here charged with misstating, not his *judgment* concerning the plaintiff's condition. Indeed, 28 LSA–R.S. § 52, defining the coroner's duty in these circumstances, states that the coroner's actions in making a commitment are "administrative."

This is not a case in which policy considerations demand protection of "officers who have acted in accordance with their apparent commands and their best judgment" [21] because to expose them to liability would be "to breed a race of do-nothing officials." [22] Nor is it an attack on a public official for exercise of his judgment.[23] On the facts now before me here, the coroner acted contrary to the terms of the statute, and he should be liable for the consequences of his conduct.[24]

---

17. See Ex parte Virginia, 1879, 100 U.S. 339, 348, 25 L.Ed. 676, where the Court said that the act of selecting jurors was not a judicial action but a ministerial act.

18. 18 American Jurisprudence 2d, "Coroners or Medical Examiners," § 8, page 522.

19. 1961, 254 N.C. 247, 118 S.E.2d 606.

20. See cases holding contra, Sandy v. Board of Com'rs Morgan County, 1909, 171 Ind. 674, 87 N.E. 131; State ex rel. Crosby v. Moorhead, 1916, 100 Neb. 298, 159 N.W. 412.

21. Harper & James, The Law of Torts, § 29.10, p. 1642.

22. Ibid.

23. See Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427. See also Harper & James, The Law of Torts, § 29.10, p. 1642.

24. See Harper & James, The Law of Torts, § 29.10, p. 1643; Norton v. Mc-

Shane, 5 Cir., 1964, 332 F.2d 855, 858–859; Gibson v. Reynolds, 8 Cir., 1949, 172 F.2d 95, 98–99; Cooper v. O'Connor, 1938, 69 App.D.C. 100, 99 F.2d 135, 138, 118 A.L.R. 1440; Belveal v. Bray, D.C. Colo., 1966, 253 F.Supp. 606, 609; Overmyer v. Barnett, 1919, 70 Ind.App. 569, 123 N.E. 654, 658; cf. Gurganious v. Simpson, 1938, 213 N.C. 613, 197 S.E. 163; Streipe v. Liberty Mutual Insurance Company, 1932, 243 Ky. 15, 47 S.W.2d 1004; Annotation, 83 A.L.R.2d 955 (1962).

The Louisiana courts have held that, in the absence of a statute requiring the coroner to examine a person whose commitment is being sought, the coroner is not liable if he signs a commitment order without an examination "if the actions are taken in good faith and without malice and the evidence is such as would have induced any other person similarly situated to take similar action." See O'Rourke v. O'Rourke, La.

The per curiam opinion in Taylor v. Glotfelty, 6 Cir., 1952, 201 F.2d 51, holds that a government psychiatrist "is not liable for damages in a civil action because of a mistake of fact made by him in the exercise of his judgment or discretion", even where "the officers acted from ulterior motives." That was a slander action based on the charge that the psychiatrist falsely said the defendant was suffering from paresis. It was also claimed that the psychiatrist had not personally examined the plaintiff. But it was not even argued that the psychiatrist had stated that he had done so; the claim was based on the alleged mistaken diagnosis.

 The defendant also contends that the Louisiana Mental Health statute gives him personal immunity. 28 LSA–R.S. § 52 provides in part:

> "Any detentions, confinements or commitments made by the coroner under the above recited circumstances are hereby declared to be administrative acts attached to the functions of his office as required by law and for which acts he is specifically granted personal immunity * * *."

But obviously the state can afford no immunity for the violation of federal constitutional and statutory rights.[25] It is fundamental that the Constitution of the United States and the statutes enacted pursuant to it are the supreme law of the land, and the state may not interpose any shield to protect its officers from the consequences of a violation of them.

For the reasons given above, the motion to dismiss and the motion for summary judgment are denied.

---

App. Orl., 1953, 69 So.2d 567, 575; the decision was reversed in 227 La. 262, 79 So.2d 87, on the basis that the coroner signed a commitment certificate in the absence of statutory authorization. Where the coroner acts in the absence of statutory authorization (and, presumably, by inference, when he acts contrary to the terms of the statute), he is liable

in damages *under Louisiana law* for his actions in that event are "illegal and unwarranted," and he is not protected by the doctrine of immunity for quasi-judicial acts. See the opinion of the Louisiana Supreme Court, cited above.

25. Cohen v. Norris, 9 Cir., 1962, 300 F.2d 24; 1A Moore, Federal Practice ¶ O.-323 [3] (1965).