KNOLL, Judge.
Hazel Lemmons appeals a trial court judgment declaring her an interdict and placing her in the care and custody of the Woods Haven Senior Citizen Home in Pollock. The trial court found Mrs. Lemmons incapable of caring for her person or her estate and that an actual necessity existed for the interdiction. The court appointed Mrs. Lemmons’ son, Johnnie, as curator and superintendent. Mrs. Lemmons’ daughter, Mary L. Addison, was appointed undercurator. Mrs. Lemmons contends the trial court erred in its factual determination that a full interdiction was warranted as opposed to a limited interdiction or no interdiction at all. We reverse.
Mrs. Hazel Lemmons, 77 years of age, lives with her husband, Judson Lemmons, 82 years of age, in their own home in Pollock. They have 2 sons: Donald and Johnnie, who live next door, and one *58 daughter, Mary Louise Addison. Over the years Mrs. Lemmons has been treated for high blood pressure, congestive heart failure, kidney failure, and strokes. She walks with the assistance of a cane. She takes 5-10 medications per day up to four times a day. Mr. Lemmons’ vision is very poor and he is referred to as blind.
October 6-24, 1985, Mrs. Lemmons was treated by Dr. Joseph W. Landreneau at Rapides General Hospital for her ailments. At the request of her children, Mrs. Lem-mons was transferred to a nursing home in Pollock, Woods Haven Senior Citizen Home, because there was no one to look after her at home. While she was at the nursing home, Mr. Lemmons moved in with her. The record is not clear as to how long the Lemmons stayed in the nursing home. While they were there, Mrs. Lemmons’ niece came to visit them and took them out to eat. The Lemmons did not return to the nursing home but went to their home instead.
On December 4, 1985, their son, Johnnie, with the consent of Donald and Mary Louise, filed this petition for the interdiction of Mrs. Lemmons on the grounds that she was incapable of taking care of her person and administering her estate. After trial on the merits, a full interdiction was granted.
Mrs. Lemmons contends the trial court was manifestly erroneous in granting a full interdiction. She argues that even a limited interdiction should not have been granted.
The following Civil Code articles are pertinent to this discussion:
LSA-C.C. Art. 389.
“No person above the age of majority, who is subject to an habitual state of imbecility, insanity or madness, shall be allowed to take care of his own person and administer his estate, although such person shall, at times, appear to have the possession of his reason.”
LSA-C.C. Art. 389.1:
“When a person is declared incapable by reason of mental retardation, mental disability, or other infirmity under the provisions of Articles 389 or 422 of the Louisiana Civil code, of caring for his own person or of administering his estate, a court of competent jurisdiction may appoint a limited curator to such person or his estate. Pending appointment of a limited curator, the court shall inquire into the specific abilities and disabilities of the incapacitated person and such limited curator shall have only those powers necessary to provide for the demonstrated needs of the incapacita-tied person. The powers, duties, responsibilities, and any liabilities of the limited curator shall be specifically set forth in a judgment of limited interdiction.
The rights of the limited interdict shall be infringed in the least restrictive manner consistent with his incapacities. A judgment of limited interdiction shall not operate to deprive the incapacitated person of any civil right, the right to contract, or any right pertaining to any license, permit, privilege, or benefit unless specifically set forth in the judgment.”
LSA-C.C. Art. 393:
“The acts of imbecility, insanity or madness must be proved to the satisfaction of the judge, that he may be enabled to pronounce the interdiction, and this proof may be established as well by written as by parol evidence; and the judge may, moreover, interrogate, or cause to be interrogated by any other person commissioned by him for that purpose, the person whose interdiction is petitioned for, or cause such person to be examined by physicians or other skillful persons, in order to obtain their report, upon oath, on the real situation of him who is stated to be of unsound mind.”
LSA-C.C. Art. 422:
“Not only lunatics and idiots are liable to be interdicted, but likewise all persons who, owing to any infirmity, are incapable of taking care of their persons and administering their estates.
Such persons shall be placed under the care of a curator, who shall be appointed and shall administer in conformity with the rules contained in the present chapter.”
*59 Before a party can be fully interdicted it must be shown that the person to be interdicted is mentally incapable of administering his or her estate and unable to take care of his or her person. Matter of Fabre, 371 So.2d 1322 (La.1979). There must be an actual necessity for the interdiction. In Re Adams, 209 So.2d 363 (La.App. 4th Cir.1968). The party moving for the interdiction bears the burden of establishing the incompetency of the one to be interdicted. Interdiction of White, 463 So.2d 53 (La.App. 3rd Cir.1985). Interdiction is a harsh remedy and should be pronounced only where there is clear and convincing proof. In Re Adams, supra.
Applying the above principles of law to the case at hand, we find that the record does not establish by clear and convincing evidence that Mrs. Lemmons should have been interdicted. Dr. Landreneau found Mrs. Lemmons mentally alert and her health stablizing. He did not feel that Mrs. Lemmons needed constant supervision but rather some assistance. Her children claim that she is lucid one day and confused the next. They cited for example that Mrs. Lemmons would forget a pot on the stove or forget to take all of her medication. These lapses of memory are not cause for the harsh remedy of interdiction. The record is void of any evidence that she was incapable of administering her estate.
While we recognize that Mrs. Lemmons has limitations, e.g., heavy house work, shopping, etc., with the gracious assistance from her daughter, Mary Louise, and her niece, Maudie L. Corley, she can administer her estate and take care of her person.
The record convinces us that the children sought Mrs. Lemmons’ interdiction because of their deep concern for their mother’s health. However, interdiction cannot be used as a matter of convenience. A judgment of interdiction is, in the final analysis, a pronouncement of civil death without the dubious advantage of an inscription thereof on a tombstone. Doll v. Doll 156 So.2d 275 (La.App. 4th Cir.1963).
For the foregoing reasons, the judgment of the trial court is reversed. All costs of trial and for this appeal are assessed to Johnnie R. Lemmons.
REVERSED.