IN RE: INTERDICTION OF ELIZABETH BANACH KISER
No. 2007 CA 1703.
Court of Appeal of Louisiana, First Circuit.
June 6, 2008.
Not Designated for Publication
PAMELA TONEY CRAWFORD, Mandeville, Louisiana Counsel for Appellant, Elizabeth B. Kiser.
D. BRUCE CAMERON SLIDELL, Louisiana, Counsel for Appellees Irene Brining Wharton and Gerald A. Brining.
Before: PARRO, KUHN and DOWNING, JJ.
KUHN, J.
Appellant, Elizabeth Banach Kiser, appeals the trial court's judgment, which declares her "an incompetent who is incapable of taking care of her person or of administering her estate," orders her interdiction, and appoints two of her adult children, petitioners, Irene Brining Wharton and Gerald A. Brining, as curatrix and undercurator respectively. We reverse.

BACKGROUND
Wharton and Brining filed a joint petition, seeking to have their mother interdicted and to be appointed as curatrix and undercurator. The petition averred that Ms. Kiser, who was nearly 80 years old at the time, was suffering from dementia (Alzheimer's type) and living at home under the constant supervision of petitioner, Brining. The petitioners alleged that, due to the dementia, Ms. Kiser was incapable of making reasoned decisions regarding the care of her person and property or of adequately communicating those decisions. Ms. Kiser filed an answer, generally denying the allegations of the petition. After a hearing, the trial court ordered a full interdiction and the appointment of the petitioners as curatrix and undercurator. Ms. Kiser appeals, urging the evidence was insufficient to support a finding of an interdiction, especially a full interdiction.

DISCUSSION
A court may order the full interdiction of a natural person of the age of majority who, due to an infirmity, is unable consistently either to make reasoned decisions regarding the care of his person and property, or to communicate those decisions, and whose interest cannot be protected by less restrictive means. La. C.C. art. 389. Revision comment (b) to Article 389 states:
For a person to be interdicted under this Article, the inability to make reasoned decisions regarding the care of his person and his property must result from an infirmity, including among others, chronic substance abuse. Advanced age alone is not an infirmity. Consequently, a person who is merely caring for his person and property in an imprudent manner, but who does not suffer from an infirmity affecting his ability to make reasoned decisions, is not a candidate for full interdiction. However, categorizing the infirmity from which a person suffers is significantly less important than evaluating his functional ability to make reasoned decisions and to communicate those decisions. A decision is not unreasoned merely because it appears risky, unwise, or imprudent.
The petitioners in an interdiction proceeding shall prove by clear and convincing evidence all facts justifying interdiction. See La. C.C.P. art. 4548.
Dr. Robert Wayne Taylor, an expert in the field of family medicine, testified on behalf of the petitioners. He had been treating Ms. Kiser for about 12 years at the time of the interdiction proceeding. Dr. Taylor stated that Ms. Kiser was presently suffering from glaucoma, hyperthyroidism, and high blood pressure and had chronic intermittent anxiety and depression. He also indicated, "[w]orking diagnosis at this time is dementia of the Alzheimer's type, which is fairly mild, and she is quite functional with it." Dr. Taylor explained that an Alzheimer's diagnosis required biopsies of the brain and without that her condition was necessarily classified as dementia.
According to Dr. Taylor, Ms. Kiser was doing rather well from a physical standpoint. He noted that about seven months earlier, she had been hospitalized due to dehydration. Dr. Taylor explained that the condition manifested severely in her, almost to the point of her death. He understood that Ms. Kiser's youngest son, who had been living with her, was unable to continue to stay with her because he had been arrested. He thought that while she was unsupervised, Ms. Kiser may simply have forgotten to drink fluids, which is a common occurrence in older people. Dr. Taylor conceded that it was family members who had reported to him that Ms. Kiser had been unsupervised for the three weeks preceding her hospitalization.
Dr. Taylor testified that most of his recent visits with Ms. Kiser had been related to her behavior with many of the complaints based on accounts by family members and nothing he witnessed firsthand. Dr. Taylor explained that when she was with him, Ms. Kiser was quite manageable and pleasant to be around. Although he had seen Ms. Kiser exhibit occasional paranoia, during his visit with her three days earlier, that condition was much improved. Noting that over the years Ms. Kiser had suffered from some memory loss, Dr. Taylor explained that Ms. Kiser had undergone a cardiac event in 1996 and that, as with many others who had suffered a similar trauma, she had some subsequent memory loss and change in behavior. Dr. Taylor also pointed out another time where Ms. Kiser had demonstrated memory loss but noted that it was ultimately traced to her medication. Once the medicine was changed, Ms. Riser's memory improved.
Dr. Taylor indicated that during his visit with her three days earlier, Ms. Kiser had been slightly disoriented, thinking that she was in her home when she was at his office. He also stated that Ms. Kiser did not know the day of the week or the date. But based on his conversation with her, Dr. Taylor found Ms. Kiser to be quite functional.
Because Ms. Kiser had to be hospitalized following the three-week period she was unsupervised, Dr. Taylor opined that she was in need of supervision to tend to her physical needs. His biggest fear was that, left unsupervised, Ms. Kiser would become dehydrated again. He believed that the supervision needed to be administered on a 24-hour basis and, therefore, that a home health care program was insufficient. But he did not think that the supervision needed to be provided by a family member; just someone reliable. He explained that he advised against moving Ms. Kiser to a nursing home because it could worsen the mild dementia from which she was suffering.
Insofar as Ms. Kiser's ability to make reasoned decisions about her business affairs, Dr. Taylor indicated that although he might have some questions about it, he would like to have a full psychiatric evaluation of her and would defer to that. And while in an affidavit Dr. Taylor opined that Ms. Kiser was "unable to consistently make reasoned decisions regarding the care of her person and property," he noted that it was executed soon after her hospitahzation for dehydration. As of the date of the hearing, Dr. Taylor continued to be concerned about Ms. Kiser's ability to care for herself physically when unsupervised. Admitting that he was not an expert in the area of her ability to tend to her business affairs, Dr. Taylor's only testimony on this point was that although she could carry a conversation, he was not sure that she would "act[] that way around everyone else."
Ms. Kiser was the only other witness to testify. She indicated that she could take care of her basic needs, such as eating and bathing. Ms. Kiser explained that she did not pay too much attention to time, not because she could not but because she chose not to do so. She stated that she had not revoked a power of attorney that she had given to her son, Rene Brining, and her friend, Kathy Cunningham. When asked whether she gave Rene authority to own her interest in her home, Ms. Kiser stated that although she wanted him to live with her, she did not tell Rene to take her house and own it. Also, when asked whether she was aware that Wharton owned a Vi interest in her home, Ms. Kiser denied knowing that and was clearly upset that her daughter had not mentioned having an ownership interest in the house.
In his reasons for judgment, the trial judge stated:
When the Court reviews Dr. Taylor's testimony, Dr. Taylor was very clear that Ms. Kiser is not in a position, and the words he used were not capable of being on her own, but required supervision. He does not feel that she needs to be institutionalized at this point, but does have questions about her ability to manage [her] business affairs, which he then went on to elaborate on later and felt that she was not able to [manage] her business affairs.
* * *
While I certainly understand Ms. Kiser's wishes to remain in her own home with sitters, the economic testimony which was listed today is probably not accurate in terms of what the actual cost of that may be. It would be a fairly expensive affair, unfortunately. That's the reality of living in the twenty-first century, I guess.
The record is devoid of any evidence to support the trial court's statement indicating that Dr. Taylor "then went on to elaborate ... and felt that [Ms. Kiser] was not able to [manage] her business affairs." Dr. Taylor's testimony on this point was simply that he had questions about her ability to manage her business affairs, "would, actually, in that case, really would like to have a full psychiatric evaluation," and would defer to that. Although he acknowledged the language in his affidavit, which attested that Ms. Kiser was "unable to consistently make reasoned decisions regarding the care of her person and property," he qualified that by noting the timing of its execution. And the affidavit fails to articulate a factual basis for such a conclusion.
Turning now to the trial court's statement, "the economic testimony which was listed today is probably not accurate in terms of what the actual cost of that may be," we find it is also without evidentiary support. The only witness that discussed the cost of 24-hour supervision was Ms. Kiser, who testified she would like to hire someone to care for her 24 hours a day and also indicated that Rene Brining might be able to supervise her around the clock. Additionally, Ms. Kiser suggested that she could hire someone to supervise her around-the-clock care if each of her six children gave $5-$10/day for that assistance. The record is devoid of any evidence establishing Ms. Kiser's means.
Based on our review, we find the record fails to establish by clear and convincing evidence that Ms. Kiser was unable to consistently make reasoned decisions regarding the care of her property or to communicate those decisions. Additionally, the record fails to establish the cost of 24-hour supervision, or that Ms. Kiser is without means to either pay someone to supervise her care around the clock or that Rene Brining is unwilling or incapable of providing her that supervision. Mindful that a judgment of interdiction is, in the final analysis, a pronouncement of civil death without the dubious advantage of an inscription thereof on a tombstone, see Doll v. Doll, 156 So.2d 275, 278 (La. App. 4th Cir. 1963), we find the trial court erred in ordering a full interdiction of Ms. Kiser and, therefore, reverse that determination.

DECREE
Finding a lack of evidentiary support to sustain the order of a full interdiction of Elizabeth Banach Kiser, we reverse the trial court's judgment. Appeal costs are assessed against petitioners, Irene Brining Wharton and Gerald A. Brining.
REVERSED.